**SUNDOR BRANDS, INC., Plaintiff,**

v.

**BORDEN, INC., Defendant.**

**No. 86–36–Civ–Oc–12.**

United States District Court,
M.D. Florida,
Ocala Division.

May 19, 1986.

J. Timothy Hobbs, Washington, D.C., Frederick J. Ward and Terry C. Young, Orlando, Fla., for plaintiff.

Christopher C. Skambis & Keith J. Hesse, Orlando, Fla., Michael A. Lechter, Milwaukee, Wis., for defendant.

## ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

MELTON, District Judge.

This cause is before the Court on plaintiff's motion for preliminary injunction, filed herein on February 21, 1986. Defendant's response thereto was filed on March 3, 1986, and on this same date, the Court heard arguments of counsel at a hearing conducted on plaintiff's motion. The Court has considered these arguments, as well as the numerous affidavits and legal memoranda tendered by both litigants. Being thus fully advised in the premises, the Court makes the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

1. Plaintiff Sundor Brands, Inc., is a corporation organized under the laws of the State of Florida, with its principal place of business in Mount Dora, Florida.

2. Defendant Borden, Inc., is a corporation organized under the laws of the State of Delaware, with its principal place of business in Columbus, Ohio.

3. In 1963, plaintiff's predecessor, Doric Foods Corporation, was formed and commenced doing business by producing and selling bottled orange juice. On January 6, 1984, plaintiff changed its name from Doric Foods Corporation to Sundor Brands, Inc. Leete Affidavit ¶¶ 3 and 12.

4. Defendant has been in the business of marketing beverages for over fifty years, and has made and sold citrus beverages for over thirty years. Rutan Affidavit ¶¶ 3 and 5; Jackson Affidavit ¶ 3.

5. In 1967, plaintiff commenced selling a new product which it had pioneered, now identified as a "citrus beverage" or "fruit punch." The product formulation consists of a citrus beverage drink containing water, sugar, concentrated orange, tangerine and lime juices, carotene for coloring and sorbic acid as a preserver, as well as other ingredients. Leete Affidavit ¶¶ 3 and 4.

6. In connection with its new citrus beverage product, plaintiff adopted the trademark FLORIDA CITRUS PUNCH®. Plaintiff first employed this trademark in 1968 and plaintiff's use of the trademark has been continuous since that date. *Id.* at ¶ 5. Plaintiff is the owner of U.S. Trademark Reg. No. 1,131,927–FLORIDA CITRUS PUNCH®. The trademark registration was issued on March 11, 1980, and now enjoys incontestable status. *See* Exhibit A to plaintiff's Complaint seeking Injunctive Relief, etc. ("plaintiff's complaint").

7. Plaintiff markets its FLORIDA CITRUS PUNCH® brand products primarily in a 64 ounce container with the following characteristics: a cylindrical body, a cone-shaped shoulder portion connecting the body to the neck and an inverted, truncated cone-shaped neck. Protruding label bumps are provided at the top and bottom of the cylindrical body, and two concave structural ribs and one convex structural rib of square or rectangular shape are found around the middle of the body. Straight vertical flutes are found around the neck portion of the bottle. *See* Exhibit B to plaintiff's complaint.

8. Plaintiff has used the above-described container configuration in connection with sales of its fruit beverages continuously since 1964. Leete Affidavit at ¶ 13. Plaintiff is the owner of U.S. Trademark Reg. No. 1,000,420 covering its 64 ounce product configuration. The registration was issued on December 4, 1974, and is on the Supplemental Register maintained by the U.S. Patent and Trademark Office. *See* Exhibit C to plaintiff's complaint. On April 17, 1983, plaintiff filed trademark application Ser. No. 448,208 to register its container configuration upon the Principal Register of the U.S. Patent and Trademark Office, pursuant to 15 U.S.C. § 1052(f) (1982). Plaintiff filed this application on the basis of acquired distinctiveness or secondary meaning, by reason of long, extensive and exclusive use. This application was declared deserving of registration upon the Principal Register and the application was published in the Official Gazette of the U.S. Patent and Trademark Office on September 3, 1985. Leete Affidavit at

¶ 17. On December 4, 1985, defendant filed its opposition to plaintiff's application for registration of its 64 ounce bottle configuration. Pomeroy Affidavit at ¶ 11. *See also* Exhibit H to plaintiff's complaint.

9. Since 1967, plaintiff has been the industry leader in terms of yearly gross sales in the citrus punch product category. Leete Affidavit at ¶ 6. Between 1968 and 1985, plaintiff's sales of FLORIDA CITRUS PUNCH® in its distinctively shaped 64 ounce container, at wholesale, have been in excess of $367,000,000. *Id.* at ¶ 14. To promote the FLORIDA CITRUS PUNCH® product, plaintiff has devoted substantial sums to various forms of advertising. For example, during the last six years, plaintiff has expended nearly $60,000,000 on advertising related to this product. *Id.* at ¶¶ 9 and 10.

10. In the last week of April 1985, defendant commenced selling a product identified as BORDEN CITRUS PUNCH. This product was marketed in the Winn Dixie food chain in central Florida. Rutan Affidavit at ¶ 20; Hutcheson Affidavit at ¶¶ 2 and 3. The container used by defendant to market BORDEN CITRUS PUNCH was substantially similar to the container used by plaintiff to market FLORIDA CITRUS PUNCH®. For example, the bottles were both of the 64 ounce size; they both had an orange cap and were made of translucent plastic material, giving them an identical orange color when filled with the citrus punch product. Both containers also displayed the various label components in a silk-screened green color of a closely similar shade. Although a close-up examination reveals slight differences in detail, the configuration of the bottles is substantially the same when viewed at a distance. *Compare* Exhibit B to plaintiff's complaint *with* Exhibit D to plaintiff's complaint. As a final note, it should be observed that the words "Refreshing Borden's Florida Citrus Punch" were imprinted on defendant's container cap, with the words "Florida Citrus Punch" being most prominent. *See* Exhibit E to plaintiff's complaint.

11. As soon as defendant's product was placed on Winn Dixie's retail store shelves, customer confusion as to the source of the parties' products was immediate. Pomeroy Affidavit at ¶¶ 8 and 9; Leete Affidavit at ¶¶ 20–22; Hutcheson Affidavit at ¶¶ 2 and 3, 5–7. This confusion is well-evidenced by a photograph taken in the Winn Dixie store in Apopka, Florida, on May 7, 1985. This photograph depicts a vertical display of defendant's product which was being advertised and promoted by the store as plaintiff's product. Hutcheson Affidavit, photograph A. Additionally, in two instances, one of plaintiff's representatives was able to purchase defendant's product using coupons for plaintiff's product. Leete Affidavit at ¶ 20.

12. Following the appearance of defendant's product in the Winn Dixie retail chain in April 1985, plaintiff protested by letter dated May 6, 1985, demanding that defendant cease further use of plaintiff's trademark and use of a trade dress confusingly similar to that of plaintiff's. Pomeroy Affidavit at ¶ 10; *see* Exhibit F to plaintiff's complaint. To avoid a possible dispute with plaintiff, defendant withdrew its remaining product from the Winn Dixie warehouse on May 17, 1985, allowing its product then on the Winn Dixie store shelves to remain until sold out. Rutan Affidavit at ¶ 22; Pomeroy Affidavit at ¶ 10.

13. While defendant's product has not reappeared on the market since the spring of 1985, defendant has not abandoned its venture into the citrus punch market, as indicated by its opposition to plaintiff's application to register its bottle configuration on the U.S. Patent and Trademark Office's Principal Register. At the hearing conducted on plaintiff's motion for a preliminary injunction, however, defendant represented that it has altered the packaging of its citrus punch product. Defendant produced both photographs and an exemplar of the changed packaging for the Court's inspection. Defendant has changed the color of the container cap from orange to green and has removed the phrase "Florida Citrus Punch" from the cap. The container cap now displays the words "BORDEN'S

CITRUS PUNCH." *See* Exhibit A to Rutan Affidavit. Defendant has also revised the graphics used in the labeling of its product in an effort to more clearly differentiate plaintiff's and defendant's respective products. *Id.* at ¶ 22 and Exhibit A.

14. At the hearing on plaintiff's motion for a preliminary injunction, defendant represented to the Court that it had no intention of reverting to its original trade dress. Defendant did state, however, that it planned to begin marketing its citrus punch in the redesigned container sometime in June 1986.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over the parties and the subject matter under 15 U.S.C. §§ 1121 and 1125(a) (1982) and under 28 U.S.C. §§ 1331 and 1338(a) (1982). Venue is predicated on 28 U.S.C. § 1391(b) and (c) (1982).

2. In order to obtain preliminary injunctive relief, plaintiff must establish the following four factors:

a. A substantial likelihood that plaintiff will ultimately prevail on the merits;

b. A substantial threat of irreparable injury to plaintiff if injunctive relief is not granted;

c. That the threatened injury to plaintiff outweighs whatever damage the injunction would cause the opposing party; and

d. That the injunction would not be adverse to the public interest.

*E. Remy Martin & Co., S.A. v. Shaw-Ross International Imports, Inc.,* 756 F.2d 1525, 1530 n. 13 (11th Cir.1985); *United States v. Jefferson County,* 720 F.2d 1511, 1519 (11th Cir.1983).

### A. *Substantial Likelihood That Plaintiff Will Prevail On The Merits*

3. In order for plaintiff to prevail on the merits of both its state and federal trademark infringement and unfair competition claims, plaintiff must establish the existence of a likelihood of confusion between the parties' trademarks and trade dress. *E. Remy Martin & Co., S.A.,* 756 F.2d at 1529–30; *Chevron Chemical Co. v. Voluntary Purchasing Groups, Inc.,* 659 F.2d 695, 701, 703 (5th Cir. Unit A 1981), *cert. denied,* 457 U.S. 1126, 102 S.Ct. 2947, 73 L.Ed.2d 1342 (1982), *cited with approval in University of Georgia Athletic Association v. Laite,* 756 F.2d 1535, 1541 (11th Cir.1985). In determining whether one trademark infringes another by creating impermissible confusion, the Court must review an "amalgram of factors," including " 'the type of trademark, the similarity of design, the similarity of the product, the identity of retail outlets and purchasers, the similarity of advertising media used, defendant's intent and actual confusion.' " *Sun-Fun Products v. Suntan Research & Development Co.,* 656 F.2d 186, 189 (5th Cir. Unit B 1981) *citing Exxon Corp. v. Texas Motor Exchange of Houston, Inc.,* 628 F.2d 500, 504 (5th Cir.1980). A court must examine these same factors in ascertaining the existence of an unfair competition claim, but more emphasis here is placed on the similarity of the overall trade dress of the products. *Sun-Fun Products,* 656 F.2d at 192.

4. In its complaint, plaintiff has prayed for, inter alia, damages arising from the fact that defendant's product allegedly displaced that of plaintiff's for a period of time in the Winn Dixie retail food chain in central Florida. Thus, one of the issues for determination in the trial of this case will be whether defendant's initial trade dress infringed plaintiff's trade dress. Based on the existence of this issue, the Court cannot disregard defendant's initial trade dress and focus solely on defendant's revised packaging in ruling on plaintiff's motion for injunctive relief.

5. In this Circuit, the law is well-settled that evidence of actual confusion between trademarks or trade dress is not a prerequisite to a finding of likelihood of confusion. There is no doubt, however, that such evidence is highly persuasive. *E. Remy Martin & Co., S.A.,* 756 F.2d 1525, 1529–30 (11th Cir.1985). In the instant case, the record demonstrates multiple instances of actual confusion among custom-

ers and the trade as soon as defendant's product appeared on the shelves. Mindful of this evidence, and also of the evidence pertinent to the other elements of the test for "likelihood of confusion," the Court finds that there is a substantial likelihood that plaintiff will prevail on the merits of its claim that defendant's original trade dress infringed its trademark and constituted unfair competition.

6. If plaintiff is to prevail in a trial on the merits of this case, plaintiff must also establish that defendant's product in its revised trade dress infringes plaintiff's product. Based on the changes made by defendant, the similarity between plaintiff's and defendant's trade dress now consists primarily of the use of the same bottle configuration. Plaintiff argues that if defendant is permitted to use this bottle configuration, it will destroy the goodwill and customer recognition that plaintiff has built in its product over a period of twenty-one years. Plaintiff notes that it has constantly policed usage by competitors of similar bottle shapes over the years and as a result of these efforts, no competitor on the market is presently using a bottle configuration similar to that of plaintiff's. Defendant, on the other hand, claims that there is no possibility of confusion between its product in the revised trade dress and plaintiff's product. Defendant also claims that plaintiff's bottle configuration is functional and, as such, is not subject to appropriation by any one party.

7. Plaintiff enjoys no presumption under trademark law with respect to its container configuration. Plaintiff's supplemental registration of its container design does not create substantive rights or in itself give plaintiff an exclusive right to use the bottle shape. *Clairol, Inc. v. Gillette Co.*, 389 F.2d 264 (2d Cir.1968). Likewise, plaintiff's application for principal registration of its container creates no presumptions in its favor because plaintiff has not completed the registration process. However, plaintiff may be entitled to protection from use by defendant of this particular bottle configuration if plaintiff can establish that the configuration has acquired secondary meaning or if plaintiff can show that defendant's use of the bottle configuration in its overall trade dress constitutes unfair competition.

8. This Court rejects defendant's argument that plaintiff's bottle configuration is functional and therefore unprotectable. Plaintiff's Director of Technical Services, Phillip C. Grinnell, has offered an affidavit which explains why the various elements of plaintiff's bottle are not dictated by function, especially in the shoulder, neck and spout areas. Indeed, Mr. Grinnell notes that in the past, he has argued for changes in the bottle design in order to reduce production costs. Mr. Grinnell states that these arguments were rejected as "company management has always resisted, adamantly, any change in the bottle configuration which is widely recognized by our customers." Grinnell Affidavit at ¶ 4.

9. Plaintiff has produced photographs and exemplars at numerous of its competitors bottles for juice drinks, none of which have a shape similar to plaintiff's configuration. *See* Plaintiff's Exhibit 1; Grinnell Affidavit at 3. Referring to these various bottles, plaintiff argues that defendant will not be placed at a competitive disadvantage by being prohibited from duplicating plaintiff's bottle configuration.

10. Defendant has offered the affidavit of its marketing director, John Rutan, which contains a listing of eight separate features which defendant claims it must be able to use in order to compete effectively in the marketplace. Rutan Affidavit at ¶¶ 10 and 12. These features include "swigability" or the ability of consumers to drink directly from the bottle, a cylindrical bodied container, ease of grasp by means of a smaller diameter bottle neck with horizontal ribbing to facilitate grasp, use of standard size cap that would not require special manufacture, limited amount of plastic for economy, ruggedness to permit transportation and marketing without bottle distortion or collapse, and two quart volume. From the array of competitors' bottles made of record, the Court does not

believe that defendant must substantially duplicate plaintiff's design in order to achieve the foregoing features.

11. A review of the law pertinent to the question of functionality reveals the "well-established" principle that "if the design of an item is nonfunctional ..., the design may become a trademark even if the item itself is functional." *Dallas Cowboys Cheerleaders v. Pussycat Cinema, Ltd.,* 604 F.2d 200, 203 (2d Cir.1979), *cited with approval in John H. Harland Co. v. Clarke Checks, Inc.,* 711 F.2d 966, 984 n. 33 (11th Cir.1983).

■ 12. Examination of recent cases also reveals that courts have consistently drawn a line between "essential" and "incidential" functionality. In *In re Morton-Norwich Products Inc.,* 671 F.2d 1332 (CCPA 1982), the court held registrable the configuration of the container for the spray cleaner "Fantastic" which featured a narrow neck portion to facilitate gripping surmounted by a spray head and trigger so arranged that gripping on the container neck places the finger in the position to squeeze the trigger. The court sustained the finding of registrability and noted that since industrial designs always have some utility, the mere presence of utility is not the test of legal functionality. The question is the degree of utility. *Id.* at 1338. Ultimately, the court stated, the test boils down to a policy question: Is there a need for competitors to copy the configuration in order to "compete effectively." *Id.* at 1339–40. If there are numerous other ways to package or bottle or shape the product, so that nothing of value to all competitors is taken, functionality is incidental and the right of the manufacturer to differentiate his product should be paramount. *Id. Accord, Truck Equipment Service Company v. Fruehauf Corporation,* 536 F.2d 1210 (8th Cir.1976), *cert. denied,* 429 U.S. 861, 97 S.Ct. 164, 50 L.Ed.2d 139 (1976). In the case at bar, plaintiff's bottle design is only incidentally functional to contain liquids. No competitor, with the exception of defendant, has found it necessary to simulate plaintiff's bottle design in order to "compete effectively." Accordingly, this Court finds that the functionality of plaintiff's bottle configuration does not render it unprotectable under the trademark laws.

■ 13. The Court finds that there is a sufficient likelihood that consumers may be confused between plaintiff's product and defendant's product in its revised packaging to establish plaintiff's unfair competition claim. Because defendant has not yet marketed its product in the revamped design, plaintiff cannot show any evidence of actual confusion. However, as noted above, such evidence is not prerequisite to a finding of a likelihood of confusion. The Court has reviewed other aspects of the test for likelihood of confusion and has found evidence to support a finding of a likelihood of confusion on these bases. Specifically, the Court has focused on the similarity of design of the trade dress, the similarity of the product, the identity of retail outlets and purchasers and the similarity of advertising media which presumably would be used. Additionally, the Court would note that the evidence of actual confusion resulting from the marketing of defendant's product in its initial trade dress is somewhat probative as to the likelihood of confusion resulting from defendant's product in its revised trade dress, as the revised trade dress retains certain features of the initial trade dress (e.g., the bottle configuration). Thus, the Court believes that there is a substantial likelihood that plaintiff will prevail on its claim that defendant's product in its revised package design unfairly competes with plaintiff's product. Because this conclusion provides the Court a sufficient basis upon which to grant plaintiff's motion for a preliminary injunction, the Court need not address the issue of whether plaintiff's bottle configuration has acquired a secondary meaning. *See Chevron Chemical Co. v. Voluntary Purchasing Groups, Inc.,* 659 F.2d 695, 702 (5th Cir. Unit A 1981) ("The principal question [in the trade dress infringement context] is whether or not the public is likely to be confused, rather than whether

the first comer's trade dress has acquired secondary meaning."), *cert. denied,* 457 U.S. 1126, 102 S.Ct. 2947, 73 L.Ed.2d 134 (1982).

### B. *The Irreparable Nature of the Threatened Injury*

14. The law is settled that the existence of a likelihood of confusion constitutes irreparable injury, as a matter of law, sufficient to satisfy the requirements of Fed.R.Civ.P. 65. *E. Remy Martin & Co., S.A. v. Shaw-Ross International Imports, Inc.,* 756 F.2d 1525, 1530 & n. 14 (11th Cir.1985); *In re Vuitton et Fils, S.A.,* 606 F.2d 1, 4 (2d Cir.1979). Because the Court has found that plaintiff is likely to prevail on the merits of its infringement and unfair competition claims by establishing a likelihood of confusion, the Court now also finds that plaintiff has established that the injury threatening it is of an irreparable nature.

### C. *Threatened Injury to Plaintiff Versus Possible Harm to Defendant by Injunction*

15. If an injunction is issued against defendant as to its initial product design, defendant will suffer no harm from such an injunction, because it has informed the Court that it no longer intends to utilize this trade dress. As to defendant's modified package design, the denial of an injunction would place the risk of likelihood of confusion upon the shoulders of plaintiff. For the reasons discussed above, the Court is unwilling to pass this burden to plaintiff. If plaintiff's goodwill is once lost, it will of course be very difficult to regain. Furthermore, the harm threatened to defendant by an injunction is mitigated by two factors: (1) according to its current schedule, defendant would not enter the marketplace with its modified container until June 1986, at the earliest; and (2) the bottles which defendant now has in stock could be stored and later used if the injunction is lifted after trial. The Court thus concludes that the threatened injury to plaintiff in permitting usage of defendant's modified container outweighs any possible harm to defendant from the granting of an injunction.

### D. *The Public Interest*

16. In a trademark or service mark infringement case, a third party, the consuming public, is present and its interests are paramount. Indeed, when a trademark is said to have been infringed, what is actually infringed is the right of the public to be free of confusion and the synonymous right of the trademark owner to control his products' reputation. *James Burroughs Ltd. v. Sign of Beefeater, Inc.,* 540 F.2d 266, 274 (7th Cir.1976); *Metropolitan Life Insurance Company v. Metropolitan Insurance Co.,* 277 F.2d 896, 900 (7th Cir.1960). The public interest in this case would be served by the entry of an injunction which would immediately prevent further confusion of customers from occurring.

### E. *Security*

17. The question of whether security will be required in order to obtain a preliminary injunction under Fed.R.Civ.P. 65 rests within the sound discretion of the Court. *Urbain v. Knapp Brothers Manufacturing Company,* 217 F.2d 810, 815–16 (6th Cir.1954), *cert. denied,* 349 U.S. 930, 75 S.Ct. 772, 99 L.Ed. 1260 (1955). The principle announced in *Urbain* was reaffirmed in *Roth v. Bank of the Commonwealth,* 583 F.2d 527, 538–539 (6th Cir. 1978), *cert. dismissed,* 442 U.S. 925, 99 S.Ct. 2852, 61 L.Ed.2d 292 (1979). Plaintiff has indicated a willingness and an ability to post such security as may be required. The Court would note that an injunction against defendant's modified container design would not necessarily result in a loss of sales because defendant could use a generic container until such time as this case is heard. Furthermore, the current stocks of defendant's modified container would still be usable in the event the injunction were lifted. In view thereof, plaintiff shall be required to post a bond in the amount of $50,000.00.

Based on the above findings,

**94**

IT IS HEREBY ORDERED AND ADJUDGED:

That Borden, Inc., its agents, its employees, attorneys, officers, servants and all persons in active consort or participation with defendant who receive notice hereof, and each of them, and their successors and assigns, be and hereby are enjoined during the pendency of this action from:

1. Further promotion, advertising, offering for sale, selling, testing or otherwise placing upon the market anywhere within the United States a juice beverage product or any other food product under the name or mark FLORIDA CITRUS PUNCH® or confusingly similar variations or simulations thereof, or in any way using the words FLORIDA CITRUS PUNCH® on or in connection with said products;

2. Further promotion, advertising, offering for sale, selling, testing or otherwise placing upon the market anywhere within the United States any type of food beverage product or any other food product utilizing the trade dress depicted in Exhibit D of plaintiff's complaint filed in this action;

3. Further promotion, advertising, offering for sale, selling, testing or otherwise placing upon the market anywhere within the United States any type of food beverage product or any other food product utilizing the bottle configuration depicted in Exhibit D to plaintiff's complaint and Exhibit A to the Rutan Affidavit. Other than the said bottle configuration, this injunction does not apply to the various other elements of defendant's trade dress depicted in Exhibit A to the Rutan Affidavit;

4. Otherwise infringing upon plaintiff's registered trademark No. 1,131,927;

5. Competing unfairly with plaintiff in any manner by continued use of the words FLORIDA CITRUS PUNCH®, or of plaintiff's trade dress or of plaintiff's container configuration in conjunction with the promotion, advertising, offering for sale, selling or otherwise placing upon the market of any type of fruit beverage product or any other food product;

6. From damaging plaintiff's goodwill and reputation by holding itself out or representing that it has some business relationship with or sponsorship by plaintiff;

7. From engaging in any false representations in connection with plaintiff's trademark and trade dress or using any confusing similar variations or simulations thereof; and

8. Plaintiff shall post a bond in connection with this Preliminary Injunction in the amount of $50,000.00, either in the form of an independent surety bond, a cash bond, or a corporate surety bond on plaintiff's general assets or any bond which is satisfactory to the Clerk of the Court.