Pamela CABRAL, Plaintiff,

v.

The OLSTEN CORPORATION,
Defendant.

No. 93–1466–CIV–T–17A.

United States District Court,
M.D. Florida,
Tampa Division.

Feb. 4, 1994.

J. Robert McCormack, Wiggins & McCormack, Clearwater, FL, for Pamela Cabral.

Barbara Ropes Pankau, Law Office of Barbara Pankau, Tampa, FL, for Olsten Corp.

## ORDER ON REPORT AND RECOMMENDATION

KOVACHEVICH, District Judge.

THIS CAUSE is before the Court on a Report and Recommendation ("R & R") issued by Magistrate Judge Charles R. Wilson on November 18, 1993 (Docket No. 24). Plaintiff, Pamela Cabral, filed a Motion for Preliminary Injunction on September 3, 1993 (Docket No. 2). This Court, under authority of 28 U.S.C. § 636(b)(1)(B), Rule 72(b) of the Federal Rules of Civil Procedure, and Rule 6.02, Local Rules of the Middle District of Florida, referred the motion to Magistrate Judge Wilson (Docket No. 3). After conducting a hearing on the motion and considering all documents, Magistrate Judge Wilson recommended that the Motion for Preliminary Injunction be granted to the extent that Defendant, Olsten Corporation ("Olsten") shall allow Ms. Cabral to make an election under the Consolidated Omnibus Budget Reconciliation Act (COBRA), 29 U.S.C. § 1161, *et seq.*, and to have continuing coverage under Olsten's health insurance plan until either the case is determined on its merits or until February 10, 1995, whichever comes first (R & R pp. 12–13).[1]

### FACTS

While the Court agrees with Magistrate Judge Wilson that the preliminary injunction should issue, it does not fully agree with the rationale for reaching that result. The following abbreviated facts adopted from the R & R are provided as background.

Pamela Cabral was employed by Olsten from November 30, 1987 until August 10, 1993, when she received notice of her termination (R & R p. 1). During September 1992, while employed by Olsten, Ms. Cabral was diagnosed with and began a seven month treatment for breast cancer (R & R pp. 1–2).

In February 1993, Ms. Cabral received approximately a six percent salary increase and an expansion of her territory (R & R p. 2).

On August 6, 1993, Ms. Cabral met with her manager, Mike McCormack regarding her continued employment with Olsten. The discussion centered around her loyalty to Olsten and her listless performance. At that time, Ms. Cabral was offered two months commission and two weeks severance pay (R & R p. 2). During the exit interview on August 9, 1993, it became apparent that Ms. Cabral was under the impression she had been discharged, whereas Mr. McCormack believed that Ms. Cabral had resigned. After further discussions, Olsten's representatives indicated that Ms. Cabral would be allowed to continue her employment subject to a probationary period of thirty days. However, on August 10, 1993, Olsten restated that Ms. Cabral had been terminated. Olsten notified Ms. Cabral by letter on August 16, 1993 that she was terminated for "gross misconduct," and therefore she was ineligible for continuing coverage under COBRA.[2] Ms. Cabral contends Olsten's termination of her was arbitrary and capricious, therefore she is entitled to the COBRA benefits (R & R pp. 2–3).

### STANDARD OF REVIEW

Pursuant to Rule 6.02, Rules of the United States District Court for the Middle District of Florida, any party may file written objections to the Magistrate's findings within ten days after being served with a copy of the R & R. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir.1982) (en banc). The district judge shall make a *de novo* determination in accordance with the rules and after review of any written objections. 28 U.S.C. § 636(b)(1)(B); *Gropp v. United Airlines*, 817 F.Supp. 1558, 1560 (M.D.Fla.1993). The district court

---

1. 29 U.S.C. § 1162(2)(A)(i) provides the period of coverage for continuing COBRA benefits under the general rule as the date 18 months after the date of the qualifying event. In this case, the qualifying event was determined by Magistrate Judge Wilson as Plaintiff's termination date, August 10, 1993.

2. 29 U.S.C. § 1163 provides:

For purposes of this part, the term "qualifying event" means, with respect to any covered employee, any of the following events which, but for the continuation coverage required under this part, would result in the loss of coverage of a qualified beneficiary:

(2) The termination (other than by reason of such employee's gross misconduct), or reduction of hours, of the covered employee's employment.

"may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1)(C). Olsten filed a timely objection with this Court (Docket No. 27). This Court has reviewed the findings of fact set forth in the R & R.

The Magistrate Judge Wilson found Ms. Cabral fulfilled the following requirements for the issuance of a preliminary injunction: 1) a substantial likelihood of success on the merits; 2) threat that irreparable harm will occur unless the injunction issues; 3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and 4) the injunction would not disserve the public interest. *Basham v. Freda*, 985 F.2d 579 (11th Cir.1993) *aff'g* 805 F.Supp. 930, 932 (M.D.Fla. 1992); *Cunningham v. Adams*, 808 F.2d 815, 818–19 (11th Cir.1987); *Canal Authority of Florida v. Callaway*, 489 F.2d 567 (5th Cir. 1974). Each of these elements is a mixed question of fact and law. *Apple Barrel Products, Inc. v. Beard*, 730 F.2d 384, 386 (5th Cir.1984).

## DEFENDANT'S OBJECTIONS

Olsten has raised several objections to the R & R. Olsten contends that: 1) the Magistrate's finding of potential irreparable harm is contrary to the law; 2) the Magistrate's conclusions that Ms. Cabral met her burden on the remaining three prerequisites to the issuance of a preliminary injunction are unsupported by the record; and 3) the Magistrate's failure to recommend that Ms. Cabral post a security bond prior to the granting of a preliminary injunction is counter to Federal Rule of Civil Procedure, 65(c) and therefore contrary to law.

■ First, this Court will address whether Magistrate Judge Wilson's finding of irreparable harm is contrary to the law. Several courts have determined that uninsurability rises to the level to establish irreparable harm. Fifteen years ago, the Second Circuit in *Whelan v. Colgan*, 602 F.2d 1060, 1062 (2d Cir.1979) determined that the threat of termination of medical benefits for workers "raised the spectre of irreparable injury." More recently, in *Communication Workers of America, District 1, AFL–CIO v. NYNEX Corp.*, 898 F.2d 887, 891 (2d Cir.1990), the Second Circuit again stated that a threat to striking workers to terminate medical coverage was irreparable harm. The First and Third Circuits and the Northern District of Illinois also hold that uninsurability constitutes irreparable harm. *International Union, United Automobile, Aerospace & Agricultural Implement Workers of America, U.A.W. v. Exide Corp.*, 688 F.Supp. 174, 186–88 (E.D.Pa.) *aff'd mem.*, 857 F.2d 1464 (3d Cir.1988) (stating the drastic reduction in health insurance benefits and wage reductions constitutes irreparable harm which cannot be adequately compensated by an arbitration decision); *United Steelworkers of America v. Textron, Inc.*, 836 F.2d 6, 8 (1st Cir.1987) (stating the loss of insurance benefits to retired workers would likely result in emotional distress, concern about financial disaster and possibly deprivation of life's necessities and constituted irreparable harm); *Coppotelli v. Rockford Spring Co.*, 1993 WL 114563 (N.D.Ill. March 31, 1993) at *3 (stating plaintiffs proved they were unable to obtain any other health insurance coverage which was sufficient to show irreparable harm).

■ In order to constitute irreparable harm, monetary damages must be insufficient to remedy the harm. *Cunningham*, 808 F.2d at 821 (citing *Sampson v. Murray*, 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974)). As the district court in *Mamula v. Satralloy, Inc.*, 578 F.Supp. 563, 577 (S.D.Ohio 1983) reflected:

"To presume that one not able to afford health insurance coverage is harmed only in a monetary sense is to ignore the realities of the situation.... The ultimate effects of delay in obtaining medical attention or of not receiving any medical attention, or of purchasing inadequate medical coverage are all incapable of being easily measured."

Although Magistrate Judge Wilson discussed the very real possibility of a relapse of cancer (R & R p. 10), this Court does not need to reach the conclusion of whether a relapse is speculative. The Court need only

determine the Ms. Cabral is currently uninsurable. The R & R states the Ms. Cabral is uninsured (R & R p. 9). Testimony presented by both Ms. Cabral and her husband reflect their desire to obtain insurance and the failure to secure insurance because of Ms. Cabral's preexisting condition, her previously diagnosed breast cancer. Therefore, Ms. Cabral has shown she is currently uninsurable.

This Court is persuaded by other jurisdictions which have held the threat of termination of medical benefits constitutes irreparable harm which is not compensable with monetary remedies. Therefore, this Court agrees with Magistrate Judge Wilson's determination that Ms. Cabral has made the requisite showing of irreparable harm if the injunction is not granted.

Olsten also argues that the Magistrate's conclusions that Ms. Cabral met her burden on the remaining three prerequisites to the issuance of a preliminary injunction are unsupported by the record. This Court is confident that Magistrate Judge Wilson properly came to these conclusions based on the testimony and evidence presented.

In order for an injunction to issue, the movant must show a substantial likelihood of success on the merits. Ms. Cabral contends her termination was arbitrary and capricious. Olsten contends her termination was based on gross misconduct due to a number of factors. In Olsten's objection to the R & R, it states "[w]hen terminating Plaintiff's employment, Olsten reached a different conclusion" than Magistrate Judge Wilson. This Court is not reviewing Olsten's actions as a "super-personnel" department, but only for a showing of substantial likelihood of success on the merits of the case. The R & R states there was a great deal of confusion at the hearing surrounding the question of whether Ms. Cabral falsified mileage reports (R & R pp. 6–7). The record supports this finding. Olsten also argues Ms. Cabral's failure to attend two mandatory meetings and an unsolicited offer of employment combined with the mileage reports constitutes gross misconduct. Again, there is ample evidence in the record which supports Magistrate Judge Wilson's finding that these disputed facts do not rise to a level of gross

misconduct (R & R pp. 6–8). Based on these facts, Ms. Cabral will likely be successful proving that Olsten acted arbitrarily and capriciously in terminating her employment.

This Court also adopts Magistrate Judge Wilson's findings regarding the third and fourth prerequisites. The Court is not persuaded by Olsten's argument that the issuance of an injunction will result in a chilling effect on employee morale and discipline or that the public interest is disserved. Congress enacted COBRA as a remedial statute to provide insurance coverage to terminated employees and their families or to the employee's spouse and dependents regardless of the circumstances of the employee's termination. *Mlsna v. Unitel Communications, Inc.,* 825 F.Supp. 862, 864 (N.D.Ill.1993).

### BOND

Finally, Olsten argues Magistrate's failure to recommend that Plaintiff post security prior to the granting of a preliminary injunction is counter to Federal Rule of Civil Procedure, 65, (c) and thus is contrary to law. Rule 65, (c) of the Federal Rules of Civil Procedure provides "no restraining order or preliminary injunction shall issue except upon the giving of security by the applicant." The question of whether security will be required rests in the sound discretion of the Court. *Sundor Brands, Inc. v. Borden Inc.,* 653 F.Supp. 86, 93 (M.D.Fla.1986).

While Magistrate Judge Wilson did not address the issue of a bond, this Court finds a security should be posted. Based on Ms. Cabral's past medical history and the likelihood of success on the merits, the Court finds that Ms. Cabral shall pay $25,000.00 as security for any costs or damages Olsten may incur.

Accordingly, it is **ORDERED** that the Report and Recommendation, dated November 18, 1993, be ADOPTED; the Motion for Preliminary Injunction be granted until the case is decided on the merits or until February 10, 1995, whichever date occurs first; and a security bond of $25,000.00 be posted.

**DONE and ORDERED.**