Patty and Paris COLLINS, Plaintiffs,

v.

AGGREKO, INC., et al., Defendants.

No. 94–C–1252 B.

United States District Court,
D. Utah,
Central Division.

May 3, 1995.

Erik Strindberg, Ralph E. Chamness, Salt Lake City, UT, for plaintiffs.

David J. Jordan, Kenneth B. Black, Salt Lake City, UT, for defendants.

BOYCE, United States Magistrate Judge.

Plaintiffs, Patty M. Collins and Paris A. Collins, a minor daughter, filed the instant action against Aggreko Inc. alleging defendant violated 29 U.S.C. § 1161 et seq. "COBRA" in regard to health insurance benefits. It is alleged that Patty and Justin Collins are married and expecting another child. Paris Collins is their minor daughter. In June

1994 Justin Collins was employed by Aggreko Inc. as a salesperson. Aggreko provided health insurance for its employees. Justin Collins applied for health insurance and obtained it on September 6, 1994.

On November 10, 1994 Justin Collins had a business meeting during which he consumed a substantial amount of alcohol. Thereafter, while operating a company vehicle on company business, Justin Collins was involved in a vehicle accident. Justin Collins pled guilty to a violation of Utah Code Ann. § 41–6–44, a Class A misdemeanor under Utah law. Persons were injured in the accident and an Aggreko Company vehicle was damaged to over $7,000. On November 11, 1994 Collins' employment with Aggreko was terminated. On November 15, 1994 Justin Collins was notified that neither he nor his family would be eligible for COBRA benefits because his termination was for gross misconduct. No notice of ineligibility was given to plaintiffs.

On or about December 2, 1994 plaintiff sent a letter to Aggreko requesting they be given the option to elect continuation of the health care insurance. On December 13, 1994 Aggreko refused plaintiffs the opportunity to elect continuation of health care coverage. Plaintiff Patty M. Collins does not have health insurance that covers her current pregnancy. Justin Collins has obtained new employment and health insurance coverage for plaintiffs, but it does not cover Patty Collins' current pregnancy. Her delivery date is about May 21, 1995. Plaintiffs seek continued COBRA coverage and penalties under 28 U.S.C. § 1132(c)(1)(A). Plaintiffs seek other damages and injunctive relief compelling insurance coverage and for Aggreko to pay the premiums.

Plaintiffs made a motion for a temporary restraining order and preliminary injunction under Rule 65(a) F.R.C.P. on April 18, 1995. Plaintiffs seek the right to continued election under Aggreko's group health coverage. The parties have consented to the magistrate judge making a final ruling on the preliminary injunction under 28 U.S.C. § 636(c). Hearing was held on plaintiffs' motion on April 25, 1995.

■ A preliminary injunction motion must be weighted against the four criteria specified in *Lundgrin v. Claytor*, 619 F.2d 61, 63 (10th Cir.1980); *Otero Savings & Loan Assn. v. Federal Reserve Bank*, 665 F.2d 275 (10th Cir.1981); *Tri–State Generation and Transmission Assn. Inc. v. Shoshone River Power Inc.*, 805 F.2d 351 (10th Cir.1986). The plaintiffs must show they will suffer irreparable injury unless the injunction issues, the threatened injury to plaintiffs outweighs whatever damage the proposed injunction may cause Aggreko, the preliminary injunction would not be adverse to the public interest, and that there is a "substantial likelihood" plaintiffs will eventually prevail on the merits. Irreparable injury generally would not exist if compensatory relief would be adequate. *Tri–State Generation*, supra p. 355. Normally, a temporary injunction is to maintain the status quo so the court can make a meaningful ruling on the merits. Id. Irreparable harm could result if defendants will be unable to pay damages or plaintiffs would suffer some other significant loss. There is no evidence of that circumstance.

The defendants Aggreko responded to the motion by presenting evidence of its alcohol policy which supports an alcohol-free workplace (Aff. of C. Anthony Ladt). A drug and alcohol screening policy has been adopted by Aggreko (File Entry # 10, Exh. A). There is some ambiguity in the policy, but it is susceptible to a reasonable construction against use of alcohol in connection with use of Aggreko automobiles. Justin Collins acknowledged the policy on June 2, 1994. In addition, a company vehicle policy prohibited operation of a company vehicle while under the influence of alcohol. The Utah drunk driving statute prohibits the operation of a vehicle within the State with a blood alcohol level of .08 or higher. Utah Code Ann. § 41–6–44. Justin Collins' blood alcohol level was 0.17.

■ Plaintiffs contend in support of their temporary injunction motion that plaintiffs were denied notice of their right to elect continuation of health insurance coverage under 29 U.S.C. § 1166(4). Group health plan insurers are obligated to allow a qualified beneficiary who would lose coverage under a health plan, as a result of a qualifying event, to elect continuation of coverage 29 U.S.C.

§ 1161. See *Hubicki v. Amtrak Nat. Passenger Co.*, 808 F.Supp. 192 (D.E.D.N.Y. 1992). However, a qualifying event does not include termination for "gross misconduct." In that event, there is no obligation on the part of the employee to provide continuation for a spouse or dependent. The language of 29 U.S.C. § 1163(2) is clear. An employee who engages in "gross misconduct" has acted in direct detriment to the employment relationship and the employee and those who have benefits derived from the relationship are not entitled to continued coverage.[1] The beneficiaries are not qualified if the employee has been discharged for gross misconduct. They are not entitled to notice as they are no longer eligible for coverage because there is no qualifying event. *Mlsna v. Unitel Communications Inc.*, 41 F.3d 1124, 1129 (7th Cir.1994). This is clear from the language of the statute Id.

The defendant contends that since there was a discharge of Justin Collins, the former Aggreko employee, for gross misconduct that the plaintiffs have no right to continuation of Aggreko's health plan coverage. The parties dispute what constitutes "gross misconduct."

■ The term gross misconduct as used by Congress must be interpreted in light of federal law and it is not appropriate to rely solely on state law. *Burke v. American Stores Employee Benefit Plan*, 818 F.Supp. 1131, 1136 (D.N.D.Ill.1993). Several federal decisions have looked to state law as an aid in interpreting the term "gross misconduct" as it is employed in state unemployment compensation matters. The problem with looking to state law and state application of the term gross misconduct is that varied applications and definitions are used from state to state. This is not a satisfactory construction of a federal statute of general application. It does not develop a consistent federal standard which is what Congress obviously intended.

In *Conery v. Bath Associates*, 803 F.Supp. 1388, 1396 (D.N.D.Ind.1992) the court discussed the concept of gross misconduct under the exception to the qualifying event language of 29 U.S.C. § 1163(2). The court held misappropriation of company funds was gross misconduct. The court said proof need not meet criminal standards. However, in *Conery* the court found there was no termination of employment but a resignation.

In *Burke v. American Stores Employer Benefit Plan*, supra, plaintiff allegedly stole "saver" stamps which could be used to redeem turkeys. It was conduct akin to theft of employer property. The court concluded the termination was for gross misconduct. The court referred·to *Paris v. F. Korbel & Brothers, Inc.*, 751 F.Supp. 834 (D.N.D.Cal. 1990) where the court had used a definition for gross misconduct applied in California state cases:

> ... conduct evincing such willful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such a degree or recurrence as to manifest equal culpability, wrongful intent or evil design or to show an intentional and substantial disregard of the employer's interest or the employee's duties and obligations to his employer.

818 F.Supp. at p. 1135.

The court in *Burke* also looked to the Illinois standard which expressly provided discharge for theft was gross misconduct.

In *Paris*, supra, the court said "mere inefficiency, unsatisfactory conduct, failure in good performance due to inability or incapacity, inadvertence or ordinary negligence in isolated instances, or good faith errors in judgment or discretion were not gross misconduct." In *Paris*, the court held that the mere violation of an employer's confidentiality rule was not gross misconduct.

1. Plaintiffs made an argument at the hearing of this matter that innocent beneficiaries of a dead employee can still have coverage whereas not innocent beneficiaries of employees discharged due to gross misconduct and that Congress could not have intended the result. This is not so. The statutory language is plain that Congress intended a difference. Under such circumstances the plain language governs the interpretation of the statute. *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989); *Thatcher Enterprises v. Cache County Corp.*, 902 F.2d 1472 (10th Cir.1990).

The plaintiff asserts gross misconduct must involve something intentional. However, that is not the language in § 1163(2). If Congress had intended intentional misconduct to be the standard, those words would have been used. Further, in *Burke* and *Paris*, no such limitation was recognized. Gross misconduct may be intentional, wanton, willful, deliberate, reckless or in deliberate indifference to an employer's interest. It is misconduct beyond mere minor breaches of employee standards, but conduct that would be considered gross in nature. Courts have, in appropriate circumstances and in other contexts, found alcohol or drug abuse to meet that standard. *Continental Oil Company v. Board of Review*, 568 P.2d 727 (Utah 1977); *Dept. of Economic and Employment Development v. Jones*, 79 Md.App. 531, 558 A.2d 739, 741 (1989).

In this case, Justin Collins would have had to have consumed a considerable amount of alcohol to reach a blood/alcohol level of .17. He knew this conduct was against company policy. It violated Utah law and he committed a serious criminal offense, he drove a company vehicle while drunk, caused a serious accident in which the company vehicle was damaged to over $7,000 and persons hurt. Justin Collins plead guilty to a Class A misdemeanor. Such conduct is wanton and a deliberate disregard of his employer's interest. It is gross misconduct. At least, at this time, there is no substantial likelihood plaintiffs will prevail on the merits.

In addition, plaintiffs must show irreparable harm. In this case plaintiff Patty M. Collins is pregnant and close to delivery of a baby. The plaintiffs have health insurance coverage through Justin Collins' new employment but it does not cover Patty's pregnancy. There are no irreparable injuries to Paris A. Collins. Patty M. Collins will give birth in a hospital, there are no expected complications or special problems with her pregnancy. The anticipated costs are standard. The only interest in this litigation is in the monetary cost of Patty M. Collins' delivery. At hearing, counsel for plaintiff Patty M. Collins suggested she might be hesitant to take some treatment or accept the proper extent of a hospital stay because of cost. However, no evidence to that effect was presented in this matter nor did Patty Collins'

indicate such a possibility. Such argument is pure speculation. It is reasonable to assume Patty Collins would follow the advice of her physician. No evidence has been presented that Patty Collins is expecting anything but a normal delivery. There is presently nothing extraordinary of a medical or economic nature about Patty M. Collins' pregnancy. This matter evolves down to a matter of damages and who will pay. If Aggreko has violated 29 U.S.C. § 1161 et seq., it will be required to bear the expenses of Patty Collins' delivery and any applicable penalties. If Aggreko terminated Justin Collins for "gross misconduct" the Collins must bear the expense.

A number of cases have held that the lack of medical or health insurance may involve irreparable injury within injunctive relief standards. In *Cabral v. Olsten Corp.*, 843 F.Supp. 701, 703 (D.M.D.Florida 1994) the court held in a COBRA case that the threat of termination of health insurance benefits constituted irreparable harm. The court relied on *Whelan v. Colgan*, 602 F.2d 1060, 1062 (2d Cir.1979). In *Cabral*, the plaintiff suffered from breast cancer, obviously a serious and potentially economically devastating medical and personal situation. Plaintiff *Cabral* had no other insurance and was uninsurable. This is not the situation in this case. *Whelan* involved the termination of benefits for all union employees and their families. 602 F.2d 1062. The same is true of other cases cited in *Cabral*. No such potential widespread harm is involved in this case. The circumstance in this case is one for which money damages will be sufficient. A medical insurance dispute does not *per se* establish the right to injunctive relief. c.f. *Owens v. Storehouse, Inc.*, 773 F.Supp. 414 (D.N.D.Ga.1990) (putting cap on AIDS coverage). Therefore, preliminary injunctive relief is inappropriate. *Tri–State Generation and Transmission Ass'n, Inc. v. Shoshone River Power Inc.*, supra.

Therefore, **IT IS HEREBY ORDERED** that the plaintiffs' motion for a temporary injunction is denied.