DECISION AND JOURNAL ENTRY
 INTRODUCTION {¶ 1} Because John Lang failed a company drug test, Quality Mold Inc. terminated him and refused to pay him for his unused vacation time. A magistrate determined that Mr. Lang was entitled to payment for his vacation time because he had not committed gross misconduct under the terms of Quality Mold's employee handbook and vacation policy. The trial court agreed. Because Quality Mold has not established that the failure of a drug test constitutes gross misconduct under the terms of its employee handbook and vacation policy, this Court affirms.
 FACTS {¶ 2} In 2001, Quality Mold hired Mr. Lang as a production supervisor. He received one week of vacation that year and three weeks of vacation each year thereafter. In January 2007, Quality Mold tested its supervisors for drugs under its substance abuse policy after receiving a complaint from an employee's mother that a supervisor was furnishing drugs to her *Page 2 
son. When Mr. Lang tested positive for cocaine and marijuana, Quality Mold terminated him and refused to pay him for his unused vacation time. Mr. Lang filed a small claims complaint seeking payment for his vacation time.
 {¶ 3} The magistrate reviewed Quality Mold's vacation policy and employee handbook and determined that they denied vacation pay if an employee was terminated for gross misconduct, but allowed vacation pay if an employee was terminated for serious misconduct. Although Mr. Lang tested positive for drugs, because there was no evidence that he had furnished drugs to another employee, the magistrate found that his misconduct was not gross misconduct. Accordingly, he was entitled to payment for his unused vacation time.
 {¶ 4} Quality Mold timely objected to the magistrate's decision, but the trial court overruled its objection. The trial court found that any ambiguity in the employee handbook should be construed against Quality Mold. It noted that, although Quality Mold's human resources manager testified that Quality Mold had a past practice of not paying unused vacation time to employees discharged for drug use, the magistrate may not have found her testimony credible. It reviewed the record and agreed with the magistrate that Mr. Lang had committed serious misconduct not gross misconduct. It, therefore, affirmed the magistrate's decision. Quality Mold has appealed, assigning two errors.
 GROSS MISCONDUCT {¶ 5} Because both of Quality Mold's assignments of error are, in effect, arguments that the trial court incorrectly determined that Mr. Lang committed serious misconduct instead of gross misconduct, this Court will consider them together. Quality Mold has noted that neither the magistrate nor the trial court defined gross misconduct. It has argued that this Court should look to Ohio criminal law and the dictionary to understand those terms. It has also argued that, *Page 3 
because an impaired supervisor can put employees at risk of injury, a supervisor who has illegal drugs in his system is guilty of gross misconduct.
 {¶ 6} The vacation policy that was in effect at the time Quality Mold hired Mr. Lang provided that an employee would not receive vacation pay if he was "terminated for gross misconduct." In February 2004, Quality Mold revised its employee handbook. The revised handbook contained a substance abuse policy that provided that employees were "prohibited from testing positive for drugs and/or alcohol." Employees who had a positive and confirmed drug test could be terminated. The revised handbook did not state that an employee would not receive unused vacation pay if terminated for gross misconduct. Regarding involuntary termination, the handbook merely provided that, "when there has been one instance of serious misconduct or incompetence, an employee may be discharged. . . . Earned but unused vacation time will be paid."
 {¶ 7} Mr. Lang has not argued that the 2004 employee handbook was a contract that superseded any previous documents regarding Quality Mold's vacation policy. There is also nothing in the 2004 handbook that inherently conflicts with Quality Mold's previous policy regarding employees who are terminated for gross misconduct. The question, therefore, is whether Mr. Lang's failure of the drug test constituted gross misconduct under that policy. The magistrate and trial court determined that it did not.
 {¶ 8} "When an appeal is directed at a trial court's findings of fact, the reviewing court must determine only whether the findings were against the manifest weight of the evidence." State v. Cheadle, 11th Dist. No. 2007-P-0083, 2008-Ohio-2393, at ¶ 10 (quoting State v.Bokesch, 11th Dist. No. 2001-P0026, 2002 WL 818874 at *2 (Apr. 30, 2002)). In State v. Wilson, 113 Ohio St. 3d 382, 2007-Ohio-2202, at ¶ 26, the Ohio Supreme Court held that the test for whether *Page 4 
a judgment is against the weight of the evidence in civil cases is different from the test applicable in criminal cases. According to the Supreme Court in Wilson, the standard applicable in civil cases "was explained in C.E. Morris Co. v. Foley Constr. Co., 54 Ohio St.2d 279."Id. at ¶ 24. The "explanation" in C.E. Morris was that "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." Id. (quotingC.E. Morris Co., 54 Ohio St. 2d at 279); but see Huntington Nat'l Bankv. Chappell, 9th Dist. No. 06CA008979, 2007-Ohio-4344, at ¶¶ 17-75 (Dickinson, J., concurring).
 {¶ 9} Although the vacation policy that was in effect when Quality Mold hired Mr. Lang included the term "gross misconduct," it did not define that term. Similarly, although Section 1163(2) of Title 29 of the United States Code provides that employers that provide health insurance to their employees must let the employees continue the insurance after they are terminated unless they are terminated for gross misconduct, the term "gross misconduct" is not defined in the statute.29 U.S.C. § 1163(2) (2000); Geissal v. Moore Med. Corp., 524 U.S. 74, 80 (1998);Nero v. Univ. Hosps. Mgmt. Servs. Org., No. 1:04CV1833, 2006 WL 2933957
at *4 (N.D. Ohio Oct. 12, 2006).
 {¶ 10} Some courts that have interpreted "gross misconduct" under Section 1163(2) have determined that it includes "misconduct that is `intentional, wanton, willful, deliberate, reckless or in deliberate indifference to an employer's interest. It is misconduct beyond mere minor breaches of employee standards, but conduct that would be considered gross in nature.'" Nero, 2006 WL 2933957 at *4 (quotingCollins v. Aggreko Inc., 884 F. Supp. 450, 454 (D. Utah 1995)). Others, applying what they consider to be the ordinary meaning of the term, have concluded that, because "the adjective gross means outrageous, extreme or unconscionable. . . . . *Page 5 
[C]onduct is gross misconduct if it is so outrageous that it shocks the conscience." Zickafoose v. UB Servs. Inc., 23 F. Supp. 2d 652, 655 (S.D. W. Va. 1998); see Boudreaux v. Rice Palace Inc., No. Civ.A. 04-541,2006 WL 3345198 (W.D. La. Nov. 15, 2006) (noting the two approaches).
 {¶ 11} Quality Mold has argued that "gross" means "[g]laringly, obvious, [or] flagrant." As the magistrate noted, there was no evidence that Mr. Lang distributed illegal drugs to other employees. There was also no evidence that Mr. Lang's drug use had impaired his performance, that he had endangered other workers, that he had any absenteeism or disciplinary problems, or that he had caused harm to Quality Mold's other employees or property. Under these circumstances, this Court concludes that the trial court's finding that Mr. Lang had not committed gross misconduct was supported by the record. See Simon v. PfizerInc., 398 F.3d 765, 777 (6th Cir. 2005) (concluding that "[t]ermination for [j]ust [c]ause," including "termination for the commission of a wrongful act such as . . . alcohol or drug abuse," was "not synonymous with the definition of gross misconduct."). Quality Mold's assignments of error are overruled.
 CONCLUSION {¶ 12} The trial court's finding that Mr. Lang had not committed gross misconduct and, therefore, was entitled to payment for his unused vacation time was not against the manifest weight of the evidence. The judgment of the Municipal Court of Akron is affirmed.
Judgment affirmed.
 The Court finds that there were reasonable grounds for this appeal. *Page 6 
We order that a special mandate issue out of this Court, directing the Akron Municipal Court, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to appellant.