**Darrell B. ZICKAFOOSE, Plaintiff,**

v.

**UB SERVICES, INCORPORATED, et al., Defendants.**

**No. Civ.A. 3:97–0980.**

United States District Court,
S.D. West Virginia,
Huntington Division.

Nov. 2, 1998.

David Nibert, Point Pleasant, WV, for Plaintiff.

Elizabeth D. Harter, William G. Anderson, Jr., Bowles, Rice, McDavid, Graff & Love, Charleston, WV, for Defendants.

## MEMORANDUM OPINION AND ORDER[1]

CHAMBERS, District Judge.

Darrell B. Zickafoose ("Plaintiff") initially filed a complaint in the Circuit Court of Mason County, West Virginia in which he alleged that his former employer committed violations of the Americans with Disabilities Act of 1990 ("ADA"), the Consolidated Omnibus Budget Reconciliation Act ("COBRA") and West Virginia common law. UB Services, Inc., a division of Concorp, Inc., (collectively "Defendants") removed the case to this Court pursuant to federal question jurisdiction. *See* 28 U.S.C. § 1331 (1996); *see also* 28 U.S.C. § 1367(a) (allowing district courts to exercise supplemental jurisdiction over related state law claims). On January 15, 1998, the Court dismissed Plaintiff's ADA claim because Plaintiff failed to exhaust his administrative remedies. *See Davis v. North Carolina Department of Correction*, 48 F.3d 134, 138 (4th Cir.1995) (holding that exhaustion of administrative remedies is a subject matter jurisdiction prerequisite); 42 U.S.C. § 12117 (1992). The Court retained jurisdiction over Plaintiff's COBRA and West Virginia common law claims. On August 20, 1998, Defendants filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure

56. In their summary judgment motion, Defendants contend that Plaintiff was terminated for gross misconduct, *see* 29 U.S.C. § 1163(2) (1992), and that Plaintiff failed to establish that Defendants' employee handbook constitutes an employment contract as recognized by West Virginia law. For the reasons stated below, the Court **GRANTS** Defendants' motion.

## I.

### FACTS

Plaintiff had worked for Defendants since 1979 and held a managerial position within UB Services, Inc., as construction superintendent. On September 8, 1995, he was involved in a violent altercation with a female co-worker. Apparently, Plaintiff and his co-worker had a relationship that extended beyond the employment setting. One night when the co-worker was visiting Plaintiff at his home, an argument ensued between them. The argument turned violent, and Plaintiff savagely beat his co-worker. As a result of Plaintiff's attack, the co-worker suffered severe pelvic injuries and required hospitalization for five days. Plaintiff was charged with a felony offense of unlawful assault and pled no contest in the Circuit Court of Mason County, West Virginia. Approximately one week after the assault, Defendants sent Plaintiff a letter in which they terminated his employment. As stated in the letter, Plaintiff was terminated for gross misconduct stemming from the assault. Although the assault did not occur at work and was not work related, Defendants indicated that they no longer had faith in Plaintiff's ability as a manager and that the assault seriously undermined subordinates' respect for Plaintiff. On the date of his termination, Defendants also canceled Plaintiff's insurance benefits.

The cancellation of Plaintiff's insurance benefits created a serious financial crisis for him. Prior to Plaintiff's assault on his co-worker, he suffered some type of head trau-

---

1. This Memorandum Opinion and Order differs slightly from the version that was sent directly to the parties. Specifically, the unpublished version contains the name of the co-worker who was assaulted by Darrell Zickafoose. The Court does not wish to include the co-worker's name in a published opinion. Also, although the result is unchanged, the Court has attempted to clarify its reasoning.

ma as a result of a truck accident. The accident left Plaintiff with severe headaches, memory loss, and a depressive disorder. Plaintiff was receiving treatment for the depressive disorder when he was terminated. In fact, Plaintiff was hospitalized briefly after the assault as a result of the disorder. Plaintiff continued to receive treatment after his termination. However, Plaintiff no longer had medical insurance to pay for the treatment and hospitalization. As a result, Plaintiff owes medical expenses.

Plaintiff contends that Defendants' decision to cancel his insurance benefits violates COBRA. Plaintiff argues that his assault on a co-worker does not qualify as gross misconduct for purposes of 28 U.S.C. § 1163(2) because it was not work related. Plaintiff also asserts that Defendants' decision to terminate him contravenes his contractual rights as stated in Defendants' employee handbook. Specifically, Plaintiff argues that Defendants' employee handbook contains an express provision that job security will not be compromised because of health problems. Plaintiff maintains that Defendants' decision to terminate him despite their awareness of his on-going treatment for depression is a violation of his contractual employment rights pursuant to West Virginia law. Defendants argue that the employment manual creates no contractual obligations and that Plaintiff's conduct still qualifies as gross misconduct for purposes of COBRA even if it occurred outside the workplace.

## II.

### ANALYSIS

A motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure is proper if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, reveal that there is no genuine issue of material fact suitable for submission to a jury. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In the trial court's evaluation under Rule 56, the evidence presented must be viewed in a light most favorable to the non-moving party and the non-moving party is entitled to the benefit of all reasonable inferences. *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp.*, 477 U.S. at 322–23, 106 S.Ct. 2548. In this case, the issues before the Court involve interpretations of COBRA and West Virginia employment law.

### A. Gross Misconduct under COBRA

COBRA demands that employers who provide insurance for their employees give the employees an opportunity to continue their insurance coverage under the employer's insurance plan even if certain qualifying events occur.[2] *See* 29 U.S.C. § 1163. Termination from employment is a qualifying event. *See* 29 U.S.C. § 1163(2). However, an employer is not required to allow an employee to continue his or her insurance coverage upon termination if the employee is fired for "gross misconduct." *See Geissal v. Moore Medical Corporation*, —— U.S. ——, 118 S.Ct. 1869, 1873, 141 L.Ed.2d 64 (1998); 29 U.S.C. § 1163(2). Unfortunately, the COBRA statute does not provide a definition of "gross misconduct" and federal case law addressing the subject is sparse. In addition, the issue of whether gross misconduct includes actions that are not work related appears to be an issue of first impression within the federal courts.

Before addressing whether gross misconduct for purposes of COBRA includes conduct off the job, the Court must decide whether Plaintiff's conduct qualifies as gross misconduct. No uniform definition of gross misconduct exists. Applying an ordinary meaning of the statutory terms, the adjective gross means outrageous, extreme or unconscionable. Accordingly, conduct is gross misconduct if it is so outrageous that it shocks the conscience. Such a definition necessitates a case by case fact-based analysis. One district court described gross misconduct as "misconduct beyond mere minor breaches of employee standards, but conduct that would be considered gross in nature." *Collins v. Aggreko, Inc.*, 884 F.Supp. 450, 454 (D.Utah 1997). In *Aggreko*, the district court found that an employee's unauthorized use of a company vehicle while intoxicated was gross misconduct. *Id.* In *Conery v. Bath Associ-*

---

**2.** COBRA applies only to employers with 20 or more employees. *See* 29 U.S.C. § 1161(b).

*ates,* 803 F.Supp. 1388, 1396 (N.D.Ind.1992), the district court held that misappropriation of company funds constituted gross misconduct. However, in *Paris v. F. Korbel & Brothers, Inc.,* 751 F.Supp. 834, 838–39 (N.D.Cal.1990), the district court found that an employee's breach of a confidentiality agreement was not gross misconduct because it did not evince any type of "evil design" to injure the employer. The district court in *Paris* adopted a definition of gross misconduct that essentially included intentional or reckless disregard for an employer's interests. *See id.* at 838. This Court chooses not to adopt the *Paris* Court's definition as the exclusive test for determining what constitutes gross misconduct. Nothing in the statute or the legislative history of COBRA indicates that an employee's actions must be intended to affect his or her employer's interest in order to be deemed gross misconduct. *See* Pub.L. 99–272, 100 Stat. 82, 222–237. Rather, this Court finds that the proper inquiry should consider not only whether the employee intended harm to the employer but likewise whether the nature of the conduct itself is reasonably outrageous to the employer. In the latter instance, the conduct or its effects must have a substantial nexus to the workplace.

■ In this case, there is no question that Plaintiff's assault was gross misconduct. Plaintiff savagely beat his co-worker to a point where she required five days of hospitalization. In addition to contusions and abrasions, the co-worker sustained multiple pelvic fractures. Plaintiff's actions were serious enough to warrant a felony conviction in state court. Such an extreme level of violence only can be characterized as unconscionable. Further, there is evidence that the employer had previously warned Plaintiff about his outbursts and temper, which Plaintiff attempts to minimize but does not deny. Hence, the Court finds that Plaintiff's assault on his co-worker was gross misconduct.[3]

■ The second question that the Court must address is whether gross misconduct as contained in section 1163(2) of COBRA includes actions that have no direct relationship to employment. Although this is an issue of first impression under COBRA, the question has been addressed in other contexts. Defendants cite several cases for the proposition that non-work related misconduct may form the basis for a dismissal and a denial of benefits. *See Claim of Haft,* 174 A.D.2d 950, 571 N.Y.S.2d 841 (N.Y.App. Div.3d Dept.1991); *Johnson v. Commonwealth, Unemployment Compensation Board of Review,* 94 Pa.Cmwlth. 24, 502 A.2d 738 (Pa.Comwlth.1986); *Muscatell v. Employment Division,* 77 Or.App. 24, 711 P.2d 192 (Or.App.1985); *Puckett v. Idaho Dept. of Corrections,* 107 Idaho 1022, 695 P.2d 407 (Idaho 1985). The cases illustrate how certain non-work related actions may have repercussions within the workplace. For example, in *Johnson,* a Pennsylvania state court held that a cafeteria chef who was charged with murdering a co-worker was properly denied employment compensation benefits. *See Johnson,* 502 A.2d at 739–41. Although the alleged murder did not occur in the workplace and was not directly work related, the Pennsylvania court found that the accused cafeteria chef's continued presence at work would have a disquieting effect on other employees. *See id.* In *Muscatell,* an Oregon state court upheld an employer's decision to terminate an employee who assaulted a co-worker even though the assault occurred outside the work setting and was not directly connected to employment. *See Muscatell,* 711 P.2d at 193. The Court found that "beating up and robbing a fellow employee, whether on the job or otherwise, was so connected with the work—because it insures an intolerable level of tension, if not downright fear, on the job . . .". *Id.*

■ The rationale behind *Johnson* and *Muscatell* applies directly in this case. While Plaintiff's conduct was not directly work related, there was a sufficient connection between employment and the gross mis-

---

**3.** West Virginia's unemployment benefits law defines gross misconduct to include committing an assault on the job, so Plaintiff contends that only assaults at the workplace can be considered gross misconduct. The Court rejects Plaintiff's argument that West Virginia's statute is controlling or particularly instructive in this context. While an assault on the job is deemed to be gross misconduct, other assaults may support denial of benefits since the statute includes the phrase "or any other gross misconduct." *See* West Virginia Code § 21A–6–3.

conduct to justify the cessation of Plaintiff's employment and insurance benefits under COBRA. Again, the appropriate test is not whether the employee's misdeeds directly or indirectly harmed the employer. Rather, gross misconduct for purposes of COBRA includes non-work related outrageous behavior if there is a substantial nexus between the behavior and the working environment such that the effects of the intolerable behavior extend into the employment arena. In this case, the nexus between the conduct and the workplace is strong. Plaintiff assaulted a coworker. If the assault had occurred between Plaintiff and a non-employee, Plaintiff might have a more compelling argument. However, the co-worker was not a person unknown or unconnected to the workplace. Employees of Defendant corporations knew her and worked with her on a daily basis. The employees also knew and worked with Plaintiff. For some employees, Plaintiff was their supervisor. Knowledge of a vicious assault by an employee might create a uncomfortable working environment under normal circumstances. However, the discomfort undoubtedly will be heightened when that employee is a manager or supervisor and the victim is a fellow employee. Such an assault not only produces fear and tension among co-workers, it casts serious doubt upon the manager's capacity for responsible decision making. Hence, Plaintiff's role as a supervisor coupled with an assault on a co-worker provides a logical nexus between the gross misconduct and the workplace to justify the disallowance of Plaintiff's insurance benefit continuation under COBRA.

## B. Plaintiff's West Virginia Common Law Employment Contract Claim

█ Like most states, West Virginia adheres to the doctrine of employment at will. *See Williams v. Precision Coil, Inc.,* 194 W.Va. 52, 459 S.E.2d 329, 340 (W.Va. 1995). The employment at will doctrine allows employers to discharge an employee for a good reason, a bad reason or no reason at all unless the termination is illegal under state or federal law. *See Id.* West Virginia law does recognize an exception to the employment at will doctrine in the case of unilateral employment contracts. *Cook v. Heck's Inc.,* 176 W.Va. 368, 342 S.E.2d 453,

459 (W.Va.1986). Specifically, the West Virginia Supreme Court of Appeals has held that the promise of job security contained in an employee handbook may constitute an enforceable unilateral contract if (1) there is a definite promise by the employer not to discharge employees except for specific reasons, (2) the handbook is distributed to the employees and, (3) the employee establishes that he knew the handbook and accepted its terms. *Precision Coil,* 459 S.E.2d at 340.

Plaintiff in this case argues that a binding contract of employment was created through his employee handbook. He points out that the handbook specifically provides that an employee will not be fired for seeking help for health problems. Plaintiff maintains that Defendants knew that he was receiving treatment for depression yet they terminated him. The termination, Plaintiff contends, violated his contractual rights pursuant to the employee handbook. Defendants argue that no promise of employment was created through the employee handbook in this case. Defendants insist that contracts of employment pursuant to a handbook must be strictly construed against the employee unless the employee establishes the existence of an employment contract by clear and convincing evidence. *See Adkins v. Gatson,* 192 W.Va. 561, 453 S.E.2d 395, 399 (W.Va.1994) (citations omitted).

█ The Court need not decide whether the employee manual in this case constitutes a binding and enforceable contract. Plaintiff was not fired because he was receiving treatment for depression. He was fired because he brutally attacked another employee. Plaintiff's employer knew before the assault that he was undergoing treatment for his psychological condition; yet, no adverse action was taken against him. Gross misconduct provided the impetus for Plaintiff's termination. There is no evidence that Plaintiff's depression was even a factor in the firing decision. Plaintiff argues that the assault resulted from his psychological impairment. However, there is a difference between termination for a disability and termination for misconduct resulting from a disability. Disability related misconduct does not serve as the basis for preventing an

658

employer from taking adverse employment action in other contexts. *See Tyndall v. National Education Centers*, 31 F.3d 209 (4th Cir.1994) (holding that excessive absences resulting from a disability were still misconduct); *Little v. FBI*, 1 F.3d 255, 259 (4th Cir.1993) (finding no discrimination under the ADA when fired for intoxication on duty even if the condition results from a disability). The Court finds no reason why gross misconduct resulting from a disability should not serve as a basis for termination in this case.

### C. Defendants' Counterclaim for the Loss of Ms. Shamblin's Services

■ Defendants filed a counterclaim in which they assert that Plaintiff's assault on his co-worker deprived the corporations of the co-worker's services. Defendants' argument appears specious. Although West Virginia law does recognize a cause of action when a third party tortfeasor intentionally injures an employee and the employer loses the employee's services, *see Nemo Foundations, Inc. v. New River Co.*, 155 W.Va. 149, 181 S.E.2d 687 (W.Va.1971), the cause of action applies only when the tortfeasor's injury is intentionally calculated to harm the employer in its contractual obligations. *See Crab Orchard Improvement Co. v. Chesapeake & Ohio Railroad Co.*, 115 F.2d 277 (4th Cir.1940). In this case, Plaintiff's assault on his co-worker was not calculated to harm Defendants' economic interests. Based upon the information contained in the record, the Court is inclined to dismiss Defendants' counterclaim. However, Plaintiff did not seek summary judgment on this issue and the Court will not dismiss the counterclaim sua sponte. Accordingly, the Court extends the dispositive motion deadline to allow Plaintiff additional time to seek summary judgment on the counterclaim.

### III.

### CONCLUSION

After reviewing the evidence presented by the parties in a light most favorable to the non-moving party, the Court **FINDS** no genuine issue of material fact. Accordingly, the Court **GRANTS** Defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The Court retains jurisdiction over Defendants' counterclaim. *See* 28 U.S.C. § 1367(c). However, the Court **GRANTS** Plaintiff seven (7) days from the entry of this Order to file a motion for summary judgment in regard to the counterclaim.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented parties.