Bartolo Morales COTTE,
et al., Plaintiffs,

v.

COOPERATIVA DE AHORRO Y
CREDITO YABUCOEÑA,
Defendant.

No. CIV 99–1254 (JP).

United States District Court,
D. Puerto Rico.

Nov. 24, 1999.

Artemio Rivera–Rivera, Roman Rios Torres & Rivera, San Juan, PR, for Plaintiff.

Julio L. Castro Velazquez, Yabucoa, Juan A. Santana Rodriguez, Dr. Palou, Humacao, PR, for Defendant.

***OPINION AND ORDER***

PIERAS, Senior District Judge.

**I. INTRODUCTION**

The Court has before it Plaintiffs' Second Brief in Compliance with Order (**docket No. 17**) (on gross misconduct issue); Defendant Cooperativa de Ahorro y Crédito Yabucoeña's ("Cooperativa") Brief in Compliance with Order—Gross Misconduct Issue (**docket No. 18**); Plaintiffs' Motion Complying with Order (**docket No. 22**); and Defendant's Informative Motion (**docket No. 24**). Plaintiffs Bartolo Morales Cotte, Morales' wife, Florita Sustache Sustache, and their minor daughters, Lida Mabel Morales Sustache and Lida Glisel Morales Sustache (collectively, "Plaintiffs"), are bringing this action under the Employment Retirement Income Security Act ("ERISA"), as amended by the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), alleging violations of their statutory right to notice of the option to elect continuing coverage under Cooperativa's group health plan and the right to

continued coverage. *See* 29 U.S.C. § 1161(a); 29 U.S.C. § 1166(a).

In the Initial Scheduling Conference Order (docket No. 11), the parties were ordered to brief the issue of the gross misconduct exception under COBRA, a defense that Defendant had raised in the ISC. Defendant alleges that it terminated co-Plaintiff Bartolo Morales Cotte ("Morales") on account of Morales' gross misconduct. Termination of employment on account of the employee's gross misconduct relieves the employer of the statutory obligation to provide COBRA notice and continuing coverage. *See* 29 U.S.C. § 1163(2). The Court determined that it would treat Defendant's allegations of gross misconduct as a motion for summary judgment by Defendant, and ordered the parties to file sworn statements to sustain the allegations of the parties with respect to the issue of co-Plaintiff Morales' gross misconduct.

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate where, after drawing all reasonable inferences in favor of the non-moving party, "the record, including the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits," reveal no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *see also Zambrana–Marrero v. Suarez–Cruz,* 172 F.3d 122, 125 (1st Cir.1999) (stating that summary judgment is appropriate when, after evaluating the record in the light most favorable to the non-moving party, the evidence "fails to yield a trialworthy issue as to some material fact"). The purpose of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for a trial." *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 50 (1st Cir.1990).

A fact is material if, based on the substantive law at issue, it might affect the outcome of the case. *Id.* at 48; *Mack v. Great Atl. and Pac. Tea Co., Inc.,* 871 F.2d 179, 181 (1st Cir.1989). A material issue is "genuine" if there is sufficient evidence to permit a reasonable trier of fact to resolve the issue in the non-moving party's favor. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Boston Athletic Ass'n v. Sullivan,* 867 F.2d 22, 24 (1st Cir.1989).

The movant bears the initial burden of "informing the district court of the basis for its motion and identifying those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Where the movant does not bear the burden of proof at trial, it must show that no reasonable fact-finder could find that the non-movant has established the requisite elements of its claim. *Id.* at 325, 106 S.Ct. 2548. Once the moving party meets his burden of proof, the burden shifts to the non-movant, who may not rest upon mere allegations or denials of the pleadings, but must affirmatively show, through the filing of supporting affidavits or otherwise, that there is a genuine issue for trial. *See First Nat. Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 288–89, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); *Goldman v. First National Bank of Boston,* 985 F.2d 1113, 1116 (1st Cir.1993). If the nonmoving party successfully meets its burden, the motion must be denied; if it does not, the motion will be granted. *See Celotex,* 477 U.S. at 324, 106 S.Ct. 2548.

## II. UNCONTESTED FACTS

Plaintiff Morales worked for Defendant as its General Manager from March 1, 1975, until his termination on April 15, 1997. Plaintiffs were participants in Cooperativa's group health plan at the time of Morales' discharge, but neither Morales nor any of the co-Plaintiffs were notified of their rights under COBRA nor of their right to continue receiving benefits from Cooperativa's Group Health Plan. Nor were Plaintiffs given the option to elect continued coverage under the group health plan pursuant to 29 U.S.C. § 1161(a).

## III.  DISCUSSION

### A.  The Parties' Arguments and Evidence Presented

Defendant admits that Plaintiffs were not provided with COBRA notice and the right to elect continuing coverage under Defendant's group health plan.  It contends, however, that Plaintiffs' Complaint should be dismissed because it is uncontested that Morales was terminated from his employment with Cooperativa due to gross misconduct.  In particular, Defendant point to four instances in which Morales engaged in misconduct:  (1) irregularities in the administration and sale of a drug store owned by Cooperativa, which led to litigation in March 8, 1997;  (2) the reimbursement of expenses to past presidents without invoices;  (3) charging fees for gas and representation expenses while on leave;  and (4) the questionable sale of a company vehicle.  Plaintiffs counter that these acts were not wrongful or were not attributable to Morales.  They further point out that most of the alleged wrongful acts took place in 1994 or 1995, and that Morales was terminated in 1997.  Due to the considerable amount of time that passed between the alleged misconduct and Morales' discharge, Plaintiffs contend that Defendant is simply looking for excuses to avoid providing Morales with benefits under COBRA to which he and his family are entitled.

Defendant submitted the affidavits of Ramón Cintrón Ruiz ("Cintrón–Ruiz"), former Assistant to Morales who succeeded to Morales' post after the latter's termination;  José A. Díaz García ("Díaz–García"), President of the Supervision Committee of Cooperativa;  and Juan Ramón Luna Otero ("Luna–Otero"), President of the Board of Directors of Cooperativa and member of a committee named by the Board to investigate Morales' conduct from 1995 to 1997.  With respect to the allegation of wrongdoing in connection with the sale of a Cooperativa-owned drug store, Luna–Otero states in his affidavit that the investigative committee "found severe and critical events of gross Misconduct [sic] of Mr. Morales at the impropper [sic] selling and administration of the" "Farmacia Cooperativa" which caused [ ] litigation and loss of money to the Cooperativa ... Aff. of Luna–Otero, ¶ 8. Cintrón–Ruiz subscribes to the allegations in Defendant's Gross Misconduct brief, reproduced in paragraph six of his affidavit.  In relevant part, he indicates that there were allegations of misconduct by Morales in connection with the sale and administration of a drug store belonging to Cooperativa, "which was sold with expired drugs, in violation of the law, and eventually caused a legal complaint from the borrowers, which ended with a [settlement] and severe economic loses [sic] to the Cooperativa."  Aff. of Cintrón–Ruiz, ¶ 6.

The accusation of improper reimbursements to past presidents of Cooperativa's Board of Directors is substantiated by all three affiants.  Díaz–García indicates in his affidavit that the Supervision Committee investigated the reimbursements to past Board presidents, and found that Morales had "incurred in gross Misconduct [sic] and violation of Cooperative Policy when he misapplied funds to pay for questionable representation expenses, with unidentified, unclear vouchers, and making payments for drinking hard liquor at bars as if they were business representation expenses."  Aff. of Díaz–García, ¶ 7. Luna–Otero, who also participated in the investigation of Morales, also declares:

> 5.  That after carefully analizing [sic] the vouchers provided by [past presidents] Rodríguez and Sánchez we discover [sic] that Mr. Bartolo Morales was making payment [sic] to vouchers that were clearly and unequivocally altered, unidentified vouchers, vouchers for reimbursement of drinking at Bars[,] none of which were properly explained or justified and none of which evidenced to be business representation expenses.
>
> 6.  That such payments are a clear violation policy [sic] and of Mr. Bartolo Morale's [sic] duties and fiscal responsi-

bilities to the Cooperative's funds and moneis [sic], which belongs [sic] to the Cooperative's members.

Aff. of Luna–Otero, ¶ 6; *see also* Aff. of Cintrón–Ruiz, ¶ 6.

Luna–Otero substantiates the allegations of the improper collection of representation expenses while on leave and the questionable sale of a company vehicle. Aff. of Luna–Otero, ¶¶ 9, 10. While he does not elaborate on the former, with respect to the latter he indicates that Morales sold a company vehicle to a non-existent individual, and resold the vehicle several times. *Id.,* ¶ 10. Cintrón–Ruiz indicates that Morales sold a car belonging to Cooperativa to a person who did not exist, "and the car was eventually re-sold by the plaintiff himself for Two [sic] hundred dollars in excess of the sale price given to Cooperativa." Aff. of Cintrón–Ruiz, ¶ 6.

Plaintiffs have submitted the unsworn declarations of Bartolo Morales and Ramón Sánchez, former President of Cooperativa's Board of Directors, and the deposition transcript of Luna–Otero. Morales states in his declaration that he was terminated from his position at Cooperativa not for gross misconduct, but rather due to Cooperativa's perception that Morales, suffering from depression, was unfit for his job. *See* Decl. of Morales, ¶ 1. Morales and Sánchez both declare that Morales committed no misconduct in the handling of the sale of a Cooperativa drug store in 1994. *See* Decl. of Morales, ¶ 7; Decl. of Sánchez, ¶ 8. Morales admits that there was a problem with expired inventories at the time of the sale of a Cooperativa drug store, but implies that such was the fault of the drug store's administrator, who reported to both Morales and the Board. *See* Decl. of Morales, ¶¶ 7–10. Sánchez confirms this explanation, stating that "Mr. Morales is not at fault neither [sic] with regards to the failure to return the expired lot of drugs to the manufacturers. The drug store administrated by David Sánchez who was ordered in [sic] repeated occasions by me an [sic] by Morales to dispose of those expired drugs." Decl. of Sánchez, ¶ 9.

Morales also denies wrongdoing in reimbursing the expenses to past presidents without invoices. He indicates that:

> Cooperativa's policy at the time was to require from the President the filing of a requisition form stating the amount spent in representing Cooperativa during that particular month. The payment could not exceed $125.00 and the requisition had to be signed by the President. All payments authorized by me to Sánchez and Rodríguez were accompanied by signed requisition forms and never exceeded $125.00.

Decl. of Morales, ¶ 12. Sánchez confirms that Cooperativa's policy was to only require a signed document for representation expenses, and that "Morales committed no misconduct during my tenure as President for not requiring from me additional documents or invoices to support my allowance requests. This was at the time our policy." Decl. of Sánchez ¶¶ 4, 5.

Both Morales and Sánchez deny that Morales improperly collected gas and representation expenses while on leave in 1996, indicating that this was considered to be part of Morales' salary. *See* Decl. of Morales, ¶ 13; Decl. of Sánchez, ¶ 7. Luna–Otero confirmed in his deposition that Cooperativa's attorney, Carmelo Cosme, rendered an opinion, later adopted by the Board, indicating that as part of his contract Morales received a monthly stipend for gasoline and representation expenses in addition to reimbursement for his expenditures. *See* Depo. of Luna–Otero, pp. 25–26. With respect to the sale of a company vehicle in 1994, Morales indicates that he was ordered by the Board to sell it to the highest bidder, which he did. *See* Decl. of Morales, ¶ 15. Sánchez states that he later sent a letter to the Supervision Committee clearing Morales of any wrongdoing. *See* Decl. of Sánchez, ¶ 6.

## B. Gross Misconduct Under COBRA

COBRA mandates that employers give former employees the opportunity to con-

tinue coverage under the employer's group health plan if a qualifying event occurs. *See* 29 U.S.C. § 1161. The plan administrator must provide notice of COBRA rights to covered employees and their spouses on two separate occasions: (1) at the time of commencement of coverage under the plan, and (2) when a qualifying event occurs. *See* 29 U.S.C. § 1166(a)(1), 1166(a)(4). Termination of employment, other than by reason of the employee's gross misconduct, is a qualifying event. *See* 29 U.S.C. § 1163(2).

Gross misconduct is not defined in the statute, and federal case law addressing the issue is sparse. Some courts have looked to state laws for guidance in defining gross misconduct. *See, e.g., Paris v. F. Korbel & Bros., Inc.*, 751 F.Supp. 834 (N.D.Cal.1990) (looking to California's unemployment statute for guidance). Other courts have applied the ordinary meaning of the statutory terms. *See Zickafoose v. UB Services, Inc.*, 23 F.Supp.2d 652, 655 (S.D.W.Va.1998). Because Puerto Rico law provides as little guidance as federal law on the subject, the Court will look to both the plain meaning of the statute and federal case law in applying the gross misconduct standard. In *Zickafoose*, the court applied the ordinary meaning of the gross misconduct statute to conclude that because gross means outrageous, extreme or unconscionable, "conduct is gross misconduct if it is so outrageous that it shocks the conscience." *Id.* It determined that there was no doubt that the plaintiff's savage beating of a co-worker, resulting in the latter's hospitalization for five days, constituted gross misconduct. *Id.*

■ Defendant points to *Conery v. Bath Associates*, 803 F.Supp. 1388 (N.D.Ind. 1992), which held that an employee's misappropriation of company funds constitutes gross misconduct and relieves the employer of its COBRA obligations if the employee is terminated for the alleged wrongdoing. *See Conery*, 803 F.Supp. at 1396. The Seventh Circuit has held that COBRA requires more than a good faith belief by the employer that the employee engaged in gross misconduct. *See Kariotis v. Navistar Int'l Transp. Corp.*, 131 F.3d 672 (7th Cir.1997) Rather, termination by reason of gross misconduct refers to the "fact (not the suspicion) of gross misconduct." *Id.* at 680. Thus, Defendant would have to establish both that Morales in fact misappropriated company funds and that Morales was terminated for that misappropriation. *See Conery*, 803 F.Supp. at 1396.

■ The Court finds that the statements submitted by both parties raise a genuine issue of material fact as to whether Morales in fact misappropriated company funds and whether Morales was terminated for that misappropriation. Defendant presents evidence to support its contention that Morales misappropriated company funds in three instances: the improper reimbursement of expenses to past presidents of the Board, Morales' improper collection of gasoline and representation expenses while on leave, and the questionable sale of a company vehicle. Plaintiffs counter with evidence that the first two allegations do not constitute wrongdoing by virtue of a company policy permitting those activities. They further provide evidence that Morales was cleared of any malfeasance with respect to the sale of the company vehicle.

The dispute of fact regarding whether Morales misappropriated company funds and whether he was terminated for that reason goes to the core of Defendant's gross misconduct defense. At this stage, the Court must make all inferences of fact in favor of the non-moving party. In so doing, the Court finds that this matter is not proper for disposition on a motion for summary judgment.

## IV. CONCLUSION

For the reasons stated above, the Court hereby **DENIES** Defendant's Motion for Summary Judgment.

**IT IS SO ORDERED.**