# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 04-2656

———————

Nancy J. Johnson,

        Appellee,

v.

U.S. Bancorp Broad-Based Change
In Control Severance Pay Program;
Severance Administration Committee,

        Appellants.

\*
\*
\*
\*
\*   Appeal from the United States
\*   District Court for the
\*   District of Minnesota.
\*
\*
\*
\*
\*

———————

Submitted: May 11, 2005
Filed: September 9, 2005

———————

Before WOLLMAN, BYE, and COLLOTON, Circuit Judges.

———————

COLLOTON, Circuit Judge.

U.S. Bancorp Comprehensive Welfare Benefit Plan/Broadbased Change in Control Severance Pay Program and its administrator, the Severance Administration Committee ("Committee"), appeal from the district court's order granting summary judgment in favor of Nancy Johnson on her claim for benefits under the Plan. The Committee argues that the district court erred in granting summary judgment because the Committee's determination that Johnson was fired for cause was not an abuse of discretion. We agree, and therefore reverse.

I.

Johnson had been a long-time employee of U.S. Bancorp when her employment was terminated in April 2002. She was fired after viewing computer files in a folder maintained by her supervisor, Kathy Ashcraft. The path to the folder containing the files was "\\INCFIN01\vol2:\Shared\CAP\KathyAshcraft\personnel." One of the files accessed by Johnson, labeled "2002 Performance Goals," contained performance information regarding other employees and information on future organizational changes. Three of the files, entitled "Please join us for our Wedding Rehearsal," "direction," and "G guestlist," were of a personal nature, and contained an invitation to Aschraft's wedding, directions to the event, and a guest list, respectively.

Around the time of Johnson's termination, U.S. Bancorp was involved in a merger with Firstar Corporation. U.S. Bancorp, in an effort to retain a number of valued employees in the face of the uncertainty caused by the pending merger, offered certain of them a severance plan (the "Plan") providing for severance pay in the event they were terminated as a result of the merger. The Plan provided that employees terminated for "Cause" would not receive severance pay under the Plan. Cause was defined in relevant part as follows:

> [G]ross and willful misconduct during the course of employment . . . including, but not limited to, theft, assault, battery, malicious destruction of property, arson, sabotage, embezzlement, harassment, acts or omissions which violate the Employer's rules or policies (such as breaches of confidentiality), or other conduct which demonstrates a willful or reckless disregard of the interests of the Employer or its Affiliates . . . . Circumstances constituting Cause shall be determined in the sole discretion of [U.S. Bancorp].

Employees who were terminated without cause within twenty-four months of the merger were eligible for severance payments of up to the equivalent of 104 weeks' salary.

U.S. Bancorp had several policies in place governing employees' use of computer technology at the time Johnson accessed Ashcraft's files. One policy, entitled "Computer and Information Security," directed employees to "[e]nsure that all of your computer access is on a need-to-know basis and is limited to the information required to perform your job." (Appellant's App. at 77). This policy also emphasized that "[i]t is important to be familiar with all policies concerning computer systems, information and privacy. These policies are available on the intranet or from your manager or supervisor and should be reviewed carefully." (*Id*.). The policy also exhorted employees to "[e]nsure information is treated as a valuable Company asset and is disclosed only on a need-to-know basis," and to "not attempt to access data that you are not authorized to access." (*Id*.). Another policy on "Use of U.S. Bancorp Technology" required "[a]ll employees who use U.S. Bancorp's technology resources [to] become familiar with and understand the U.S. Bancorp Information Security Services policies and standards and support their enforcement." (*Id*. at 76).

In April 2002, an employee notified management at U.S. Bancorp that rumors about organizational changes resulting from the pending merger with Firstar were circulating in the Finance Division. U.S. Bancorp's Information Security division investigated whether employees had accessed computer files that would have contained such information. The investigators determined that several employees, including Johnson, had accessed the computer file entitled "2002 Performance Goals." When confronted by a Human Resources representative about accessing the files in Ashcraft's directory, Johnson admitted that she "had no business reason for accessing and viewing the files in question." U.S. Bancorp's Controller, Terrance Dolan, then made the decision to fire Johnson. Johnson was presented with a "Notice of Termination" stating that her termination was "deemed a termination for cause" as

defined in the Plan, and that she therefore would not receive severance pay. The Notice cited "unethical conduct" that violated U.S. Bancorp's Code of Conduct as the basis for Johnson's termination.

Despite the Notice's disclaimer, Johnson applied for severance pay under the Plan on June 25, 2002, arguing that her termination was not for cause. The Committee denied her request on August 26, 2002, reasoning that Johnson's conduct in accessing the personnel information in Ashcraft's directory "violated U.S. Bancorp's policies in its Employee Handbook." (Appellant's App. at 87). The policy provisions violated, according to the Committee, included the Computer and Information Security policy, which mandates that all employee "computer access is on a need-to-know basis and is limited to information required to perform your job," and the Code of Ethics and Conduct on the Job, which requires that "[t]he use of any information stemming from your employment shall be restricted to that which is absolutely necessary for the legitimate and proper business purposes of U.S. Bancorp," that "employee information . . . be treated as highly confidential in all cases," and that "employees treat all company resources with the respect befitting a valuable assert [sic] and . . . that such resources should never be used in ways that could be interpreted as imprudent or improper." (Appellant's App. at 87).

Johnson appealed for reconsideration of the Committee's determination, but in a decision issued on October 29, 2002, the Committee upheld its earlier determination. The Committee rejected Johnson's argument that she did not know the files she accessed were confidential, reasoning that the location of the files in Aschcraft's personnel file and the labels on these files made it "obvious" that Johnson was not authorized to view them. (Appellant's App. at 130). The Committee wrote that in addition to viewing Johnson's conduct as "gross and willful misconduct," it believed that her actions "demonstrated a willful or reckless disregard of U.S. Bancorp's interests." (*Id.*).

Following the Committee's denial of her appeal, Johnson brought a civil action in the District of Minnesota pursuant to 29 U.S.C. § 1132(a)(1)(B), alleging that the Committee had abused its discretion in denying Johnson severance pay. The district court agreed, granting summary judgment for Johnson on August 11, 2003. On June 15, 2004, the district court awarded Johnson $122,399.18 in severance wage benefits plus interest, $20,211.75 for welfare benefits, and $42,090.00 in pre- and post-judgment attorney's fees.

## II.

ERISA permits a participant in an ERISA-regulated plan to bring a civil action "to recover benefits due to [her] under the terms of [her] plan, to enforce [her] rights under the terms of the plan, or to clarify [her] rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). The district court's review of plan determinations is *de novo*, unless the plan grants discretionary authority to the plan administrator "to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). In such a case, the district court is required to review the plan administrator's interpretation of the terms of the plan for abuse of discretion. *Id*. U.S. Bancorp's Plan gives the Committee full discretion to "interpret and administer the terms and conditions of the Plan, decide all questions concerning the eligibility of any persons to participate in the Plan, [and] grant or deny benefits under the Plan," (Appellant's App. at 35), so the district court was required to review the Committee's interpretation of the Plan for abuse of discretion. *See Firestone*, 489 U.S. at 115; *King v. Hartford Life & Accident Ins. Co.*, 414 F.3d 994, 999 (8th Cir. 2005) (en banc). The Committee's application of the plan to Johnson's factual situation is reviewed to determine whether it is supported by substantial evidence, that is, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (internal quotation omitted).

In its Memorandum Opinion and Order, the district court acknowledged that the Committee's decision should be reviewed for abuse of discretion. The court, however, concluded that no reasonable person could have found that U.S. Bancorp had cause to terminate Johnson's employment. It reasoned that because U.S. Bancorp had "absolutely no safeguards in place to prevent Johnson from viewing the so-called 'confidential information,'" the information could not have been confidential. (Add. at 8). The court also concluded that Johnson was authorized to access the files she viewed because "nothing prevented her access whatsoever." (*Id*.). The court held that while Johnson "may have been nosy, and her common sense should have prevented her access," her conduct did not amount to gross and willful misconduct under the Plan, and that Johnson was therefore terminated without cause. (Add. at 8-9). On *de novo* review of the district court's decision, *see Hebert v. SBC Pension Benefit Plan*, 354 F.3d 796, 798 (8th Cir. 2004), we hold that the district court erred in ordering an award of benefits, and that judgment should be entered for the Committee.

A plan administrator's interpretation of a plan does not constitute an abuse of discretion so long as it is "'reasonable,' even if the reviewing court disagrees with the interpretation." *Neumann v. AT&T Communications, Inc.*, 376 F.3d 773, 781 (8th Cir. 2004). "Cause" is defined under U.S. Bancorp's Plan to include "gross and willful misconduct during the course of employment." (Appellant's App. at 43). The Plan further defines "gross and willful misconduct" to "includ[e] . . . acts or omissions which violate the Employer's rules or policies (such as breaches of confidentiality)." (*Id*.). Because "gross and willful misconduct" is a term specifically defined in the Plan, the administrator was not bound to apply definitions of that phrase that govern in other contexts. *See Jackson v. Metropolitan Life Ins. Co.*, 303 F.3d 884, 888-89 (8th Cir. 2002) (considering plan's "highly-specific definition of 'disabled,'" and holding that administrator was not bound by determination that participant was "disabled" under similar, but different, definition employed by Social Security Administration); *Lickteig v. Business Men's Assurance Co. of Am.*, 61 F.3d

579, 583-85 (8th Cir. 1995) (rejecting contention that trustee could construe term "active employee" based on "ordinary understanding" of "actively at work" when "active employee" was specifically defined in the plan). Nor do we discern a "federal common law" that requires an administrator with discretion to apply a particular definition of "gross and willful misconduct" under this Plan. Interpretations of that phrase as it appears in federal statutes, or even interpretations of this very Plan that a court might adopt on *de novo* review, do not bind an administrator with discretion to interpret uncertain terms in a plan, so long as the administrator's interpretation is reasonable. *King*, 414 F.3d at 999.

Given the specific definition of "gross and willful misconduct" in the Plan, the Committee reasonably interpreted "Cause" to include violations of U.S. Bancorp's policies forbidding an employee to "access data that you are not authorized to access," and requiring an employee to "[e]nsure that all of your computer access is on a need-to-know basis and is limited to the information required to perform your job," at least where such violations are knowing and willful. On its face, the Plan defines "Cause" and "gross and willful misconduct" to include *all* violations of company policy, regardless of the employee's knowledge or intent. The absence of any limitation on which violations of company policy constitute "gross and willful misconduct" leaves uncertain the precise contours of the defined term in this Plan. In this instance, the administrator found that Johnson acted both knowingly and willfully when she violated company policy, thus applying the standard more narrowly than the plain language of the Plan might suggest. We think this was a reasonable exercise of the administrator's discretion in applying uncertain terms of the Plan, and we find no basis in the language of the plan, or the federal common law of ERISA, to require the administrator to narrow the definition further based on the

-7-

meaning of "gross" misconduct in other contexts, particularly given the lack of a generally applicable interpretation of that rather nebulous term.[1]

Substantial evidence also supported the Committee's determination that Johnson's actions violated those policies, and that her actions were knowing and willful, as those terms are reasonably construed. The evidence considered by the Committee included testimony that Johnson, when confronted about accessing the files, admitted to having no "business reason" for accessing and viewing them. Johnson, moreover, does not deny accessing the files and admits "the inapplicable nature of the information to her job duties." (Appellee's Br. at 14). It was reasonable for the Committee to conclude that Johnson acted knowingly, because a reasonable mind could conclude that the name and location of the file concerning performance goals indicated that it was not a document to which Johnson required access to perform her job, and when interviewed about the incident, Johnson never asserted lack of knowledge as a defense. There also was ample evidence to support the Committee's conclusion that Johnson voluntarily and intentionally accessed the files, thus establishing willful conduct, as opposed to accidental or negligent acts. *See Black's Law Dictionary* 1593 (7th ed. 1999) (defining "willful" as "voluntary and intentional," but not necessarily malicious); *United States v. Murdock*, 290 U.S. 389, 394 (1933) (explaining that the word *willfully* "often denotes an act which is intentional, or knowing, or voluntary, as distinguished from accidental"), *overruled in part on other grounds*, *Murphy v. Waterfront Com'n*, 378 U.S. 52 (1964). The record shows that to access the files, Johnson had to take several discrete and deliberate steps, and that she could not have viewed them by way of an accidental click of her computer equipment.

---

[1]Our holding that the Committee acted within its discretion to find "Cause" in the case of a knowing and willful violation of company policy does not, of course, speak to whether it would be reasonable for the Committee to reach the same conclusion in the case of an inadvertent and unknowing violation. *Cf. post*, at 10.

-8-

In our view, the district court's determination that "Johnson was authorized to access the files," because "nothing prevented her access whatsoever," mistakenly equated *ability* to access a file with *authorization* to access the file. This interpretation effectively imposed an extralegal requirement that U.S. Bancorp secure confidential information from employees by affirmatively preventing access through technological means, rather than through written policies. U.S. Bancorp employees are responsible under the company's policies for maintaining appropriate limits on their computer use. Johnson's ability to access the personnel file thus does not indicate that she was authorized to do so. Indeed, the policy instructing an employee to limit computer access to information that is required to perform her job seems to presume that access to other information is possible, but prohibited.

Johnson's brief explains that she was a long-term employee who received many favorable performance reviews over the years. Whether her conduct in accessing these computer files warranted discharge is debatable as a matter of business judgment. But we are not empowered to make that sort of business judgment, deciding in the first instance whether Johnson deserved to be terminated under all of the circumstances. In the context of review of an ERISA plan administrator's discretionary decision, we are limited to determining whether a reasonable person could have interpreted and applied the ERISA plan in the way that the administrator did, and here the answer is yes.

Accordingly, we reverse the judgment of the district court and remand for entry of judgment in favor of the appellants.

BYE, Circuit Judge, dissenting.

I respectfully dissent. I believe the Severance Administration Committee (Committee) clearly abused its discretion when it determined Nancy Johnson's conduct in accessing files located on a shared computer drive constituted "cause"

-9-

under the terms of the severance plan (Plan). I would therefore affirm the district court's grant of summary judgment in favor of Nancy Johnson.

To constitute "cause," the Plan required Johnson's misconduct to be both "gross and willful." Glaringly lacking from the Committee's determination is any discussion of how Johnson's conduct constituted "gross" misconduct. While the Plan defines "gross and willful" misconduct to include "acts or omissions which violate the Employer's rules policies," it cannot follow that every violation of a rule or policy constitutes "gross and willful" misconduct. Otherwise, inadvertent rule violations would be considered "willful" violations, and the Plan's inclusion of the word "willful" would be rendered meaningless. By the same token, the word "gross" is rendered meaningless if minor rule violations constitute "gross" misconduct.

The Court contends the Committee was not bound to apply a definition of the term "gross and willful misconduct" which might govern in other contexts. While I agree, I do not view that as the relevant inquiry. The relevant inquiry is whether the Committee neglected to give *any* meaning to the term "gross" in the Plan. When reviewing the Committee's decision we must necessarily consider whether its "interpretation renders any language in the Plan meaningless or internally inconsistent." Torres v. UNUM Life Ins. Co. of Am., 405 F.3d 670, 680 (8th Cir. 2005) (citing Shelton v. ContiGroup Cos., Inc., 285 F.3d 640, 643 (8th Cir.2002)). An ERISA fiduciary abuses its discretion when it renders Plan language meaningless. Id.

The Court's conclusion the Committee was free to interpret "gross and willful" misconduct to include *all* violations of company policy necessarily renders the terms "gross" and "willful" meaningless, and offends my sense of justice. To call every inadvertent or unknowing violation a "willful" violation is absurd. Likewise, it is absurd to call every violation, no matter how trivial or insignificant, a "gross" violation. For example, the same area of the Employee's Handbook containing the

Computer and Information Security policy relied upon by the Committee to deny Johnson's substantial severance benefits also contains a policy on Business Appearance. The Business Appearance policy requires employees "to use good judgment and dress in a professional manner that is appropriate to your work surroundings and suited to your particular job." Under the Court's view, the Committee would not have abused its discretion if it determined any and all violations of the Business Appearance policy to constitute "gross and willful misconduct" which that would justify a denial of severance benefits.

In my view, because the Plan does not specifically define a "gross" rule violation, the term should be given its ordinary meaning. Mansker v. TMG Life Ins. Co., 54 F.3d 1322, 1327 (8th Cir. 1995). In interpreting the meaning of an ERISA plan, we should also look to the "federal common law." Reid v. Connecticut Gen. Life Ins. Co., 17 F.3d 1092, 1098 (8th Cir. 1994). Turning to analogous federal statutes which employ the undefined terms is "surely a promising source in a search for the federal common law." Camelot Care Ctrs., Inc. v. Planters Lifesavers Co., 836 F. Supp. 545, 548 (N.D. Ill. 1993).

There is a relatively large source of federal common law interpreting what constitutes "gross misconduct." Under the Consolidation Omnibus Budget Reconciliation Act of 1985, a covered employer has an obligation to provide an employee with continued health care coverage unless the employee is terminated for "gross misconduct." 29 U.S.C. § 1163(2). Because § 1163(2) does not otherwise define what constitutes "gross misconduct," courts have had to fashion "federal common law" to address the issue.

While there is no generally applicable or binding judicial interpretation of gross misconduct, Bryant v. Food Lion Inc., 100 F. Supp. 2d 346, 375 (D. S.C. 2000), the courts agree mere lapses in good judgment on isolated occasions cannot constitute gross misconduct. See Richard v. Indus. Commercial Elec. Corp., 337 F. Supp. 2d

279, 282 (D. Mass. 2004) (indicating gross misconduct to be something "flagrant and extreme" and "out of all measure; beyond allowance; not to be excused; flagrant; shameful" and something "more than that conduct which comes about by reason of error of judgment or lack of diligence.") (internal citations omitted); Cotte v. Cooperativa de Ahorro y Credito Yabucoena, 77 F. Supp. 2d 237, 241 (D. P.R. 1999) ("[G]ross means outrageous, extreme or unconscionable, conduct is gross misconduct if it is so outrageous that it shocks the conscience.") (internal citation and quotations omitted); Zickafoose v. UB Services, Inc., 23 F. Supp. 2d 652, 656 (S.D. W. Va. 1998) (indicating misconduct is not "gross" unless "the employee intended harm to the employer [and] the nature of the conduct itself is reasonably outrageous to the employer."); Collins v. Aggreko, Inc., 884 F. Supp. 450, 454 (D. Utah 1995) ("Gross misconduct may be intentional, wanton, willful, deliberate, reckless or in deliberate indifference to an employer's interest. It is misconduct beyond mere minor breaches of employee standards, but conduct that would be considered gross in nature.").

In Paris v. F. Korbel & Bros., Inc., 751 F. Supp. 834 (N.D. Cal. 1990), the court addressed a breach of confidentiality somewhat similar to Johnson's conduct. Leigh Paris worked for a winery and was given access to the "poolhouse," a place where executives met and sometimes discussed employees. Paris was instructed whatever she may overhear in the poolhouse was confidential, and she was not to share it. On one occasion, she heard executives discussing a particular employee who had asked to work part time for personal reasons. Paris, who happened to be friends with the employee's wife, told her friend the company was going to allow her husband to work part time. The executives discovered the employee was upset with his boss for sharing his personal information. Paris was identified as the source of the leak, and terminated. Paris, 751 F. Supp. at 835-36.

When Paris applied for COBRA benefits under § 1163(2), the issue was whether her breach of confidentiality should be considered "gross misconduct" which would disqualify her for continuing health care coverage. The court said no,

concluding gross misconduct required a showing Paris "had an 'evil design' to injure Korbel" and exercising "poor judgment" on one occasion was not enough. Id. at 839. Similarly, here, Johnson may have shown poor judgment in briefly peeking at the files located on the shared computer drive. But there was no evidence Johnson even shared this information with other employees. Her isolated instance of poor judgment evinced no "evil design" to injure U.S. Bancorp, and was clearly not flagrant, extreme, all out of measure, or so outrageous it shocks the conscience.

The federal common law governing ERISA plans mandates an employee's misconduct must be severe, i.e, flagrant, extreme, all out of measure, or so outrageous it shocks the conscience, to be considered "gross." Isolated lapses of judgment which do not have a significant impact on the employer clearly do not suffice. No reasonable person would conclude Johnson's conduct amounted to anything more than a minor rule violation, with little or no adverse impact on U.S. Bancorp. Her conduct clearly was not outrageous or conscience-shocking. To the contrary, what does shock my conscience is that the Plan would insist upon enforcing such a minor rule violation so as to justify it precluding this long-term, exemplary employee a financial benefit of approximately $150,000 in severance pay.

I respectfully dissent.

_____